IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

**JESSIE HOFFMAN # 400473**
        Petitioner

NO. 09-3041

v.

SECTION "B"

**BURL CAIN, Warden,**
        Louisiana State Penitentiary,
        Angola, Louisiana,
        Respondent

**MEMORANDUM OF LAW ON IN SUPPORT OF GRANTING THE WRIT ON CLAIM II OF THE HABEAS PETITION**

Now comes JESSIE DEAN HOFFMAN, JR, Petitioner, through undersigned counsel, and pursuant to the Court's December 10, 2010 order presents this Memorandum of Law addressing the need for an evidentiary hearing on Claim II and other claims in his *Petition for Habeas Corpus* ("Habeas Petition").

### Introduction

Petitioner's Habeas Petition is pending before this Court and oral argument on it is scheduled for January 13, 2011. In anticipation of oral argument, this Court conducted a status conference, via telephone, on December 10, 2010. At that time, the Court raised issues pertaining to Claim II of the Habeas Petition and directed counsel to provided further information pertaining to it. On December 24, 2010, Petitioner filed a *Memorandum of Law on Exhaustion of Claims II and III* as directed by the Court. The State filed a *Supplemental Memorandum Regarding Issue of Exhaustion of State Court Remedies*. The State also submitted the affidavit of Dr. Fraser MacKenzie as directed by the Court. Petitioner now responds to this

1

Court's query and the State's submission of the affidavit particularly addressing whether there is a need for live testimony at an evidentiary hearing on Claim II of the Habeas Petition.

I.  **THE RECORD BEFORE THIS COURT, CONSISTING OF THE STATE COURT RECORD AND PLEADINGS AND SUBMISSIONS PENDING IN THIS COURT, PROVIDES A SUFFICIENT BASIS UPON WHICH TO GRANT PETITIONER RELIEF ON CLAIM II.**

This Court has the discretion to grant habeas relief without a hearing. *Barrientes v. Johnson*, 221 F.3d 741, 770 (5th Cir. 2000). When the court has sufficient facts before it to resolve a claim on its merits, no evidentiary hearing is required.

> Most often, this situation arises when the district court denies the petitioner relief without conducting an evidentiary hearing. But the rule also applies in a situation where the district court has sufficient facts before it and grants the writ without a hearing. *See Hicks v. Wainwright,* 633 F.2d 1146, 1150 (5th Cir. Unit B 1981) ("The State argues that the district court should have held an evidentiary hearing. An evidentiary hearing is necessary only when facts are at issue. When the only question is legal rather than factual no evidentiary hearing is needed.").

*Id.*; *see also Browder v. Director*, 434 U.S. 257, 266 n.10 (1978) (citing *Walker v. Johnston,* 312 U.S. 275, 284 (1941), for proposition that district court may "discharge a habeas corpus petitioner from state custody without conducting an evidentiary hearing, when the facts are undisputed and establish a denial of petitioner's constitutional rights"); *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988) (holding summary disposition of habeas claim appropriate where no genuine issues of material fact). Thus if the state court record and other submissions, along with the pleadings, establish that the facts proving a claim are uncontested, the district court may grant the writ without hearing further evidence. *Liles v. Saffle*, 945 F.2d 333 (10th Cir. 1990), *cert. denied*, 502 U.S. 1066 (1992) (habeas writ properly granted without evidentiary hearing based upon expert and lay affidavits, medical records, and other state court records where state's only argument against the grant was legal in nature and state did not contest factual assertions).

At issue in Claim II of the Habeas Petition is whether the State's failure to turn over a Coroner's Investigator Report containing information critical to the defense, as well as its argument of false and misleading facts to the jury, violated Petitioner's rights to due process, a fair trial, and a reliable sentencing proceeding under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. The State does not contest the existence of the Coroner's Investigator Report nor the fact that that it was not furnished to defense prior to trial. It further does not contest the evidentiary significance of the report—that the absence of lividity at the time the victim's body was discovered indicates that her body had not been resting in the place it was discovered since the time of the shooting, 14 hours before. The State only claims that this evidence was irrelevant to Petitioner's defense at trial. However, the State's position is belied by the record and the position the prosecution itself took at trial. The undisclosed evidence goes directly to the heart of dispute over specific intent and moral culpability at trial. This Court has the discretion to grant habeas relief on the pleadings alone. Nonetheless, if the Court finds otherwise, Petitioner has made the necessary showing entitling him to an evidentiary hearing in order to further develop the facts to prove his claim.

### A. The Pleadings and Evidence Before this Court Establish that the State Suppressed Favorable and Material Evidence in Violation of Mr. Hoffman's Constitutional Rights.

Due Process requires that the State provide the defendant with all evidence "favorable to the accused" and "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The *Brady* doctrine applies whether or not there has been a request by the defense, and includes cases where the prosecutor is unaware of the existence of such evidence. *United States v. Agurs*, 427 U.S. 97, 110-12 (1976); *Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995). The State's duty obligates the

individual prosecutor to learn of any favorable evidence known to others acting on government's behalf, including the police. *Kyles*, 514 U.S. at 436-37.

The Supreme Court in *Strickler v. Greene* set forth the three elements of a *Brady* prosecutorial misconduct claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." 527 U.S. 263, 281-282 (1999). Prejudice is shown when there is a reasonable probability that, had the evidence been disclosed at trial, the result of the proceeding would have been more favorable. *Kyles v. Whitley*, 514 U.S. at 434. The Court in *Kyles* emphasized that the prejudice prong is not outcome-determinative: "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.* at 434 (quoting *Bagley*, 473 U.S. at 678).

> **1. There is no material issue of fact pertaining to whether the Coroner's Investigator Report was suppressed by the State.**

Petitioner only discovered the Coroner's Investigator Report subsequent to an order issued by the state district court in 2003, five years after he was convicted and sentenced to death. Despite a specific pre-trial request for discovery of all reports concerning examinations of the victim's body, R. 107, and a specific pre-trial request for all exculpatory evidence which highlighted the State's duty to ascertain all evidence in the possession of government agencies, R. 516, 518, defense was not provided with the Coroner's Investigator Report prior to trial.

The State does not, nor can it based upon the record before this Court, contest that the report was not turned over to defense. Discovery provided to defense by the State prior to trial was filed into the record, R. 133-290, and did not include the report. Indeed, the State points out in its *Memorandum in Opposition to Application for Writ of Habeas Corpus* ("Opposition") that

4

it provided "open-file" discovery to the defense and that the report "was not in the possession of the prosecutors." Opposition at 26. The report clearly existed in the files of the Coroner's Office: it was obtained in response to a court order. *Order for Production of St. Tammany Parish Coroner's Office Records*, 11/11/03.

This Court need not take evidence pertaining to whether the report was withheld. The only remaining issue to be determined in this regard is a legal one: whether the prosecution is held accountable for non-disclosure of a report of an investigative arm of the State. The law is quite clear on this point. It is.

> In the State's favor it may be said that no one doubts that police investigators sometimes fail to inform a prosecutor of all they know. But neither is there any serious doubt that "procedures and regulations can be established to carry [the prosecutor's] burden and to insure communication of all relevant information on each case to every lawyer who deals with it." *Giglio v. United States, 405 U.S. 150, 154, 31 L. Ed. 2d 104, 92 S. Ct. 763 (1972)*. Since, then, the prosecutor has the means to discharge the government's *Brady* responsibility if he will, any argument for excusing a prosecutor from disclosing what he does not happen to know about boils down to a plea to substitute the police for the prosecutor, and even for the courts themselves, as the final arbiters of the government's obligation to ensure fair trials

*Kyles*, 514 U.S. at 438.[1] *See also United States v. Webster*, 392 F.3d 787 (5th Cir.2004) ("The duty to produce requested evidence falls on the state; there is no suggestion in *Brady* that different 'arms' of the government are severable entities") (citing *Martinez v. Wainwright*, 621 F.2d 184 (5th Cir. 1980) (finding *Brady* violation for state's failure to disclose a record in possession of the medical examiner even though the state prosecutor was unaware it was there)).

---

[1] For better or worse, there appears to have been a pattern of police failing to turn over exculpatory reports to prosecutors in St. Tammany Parish. *See Burge v. St. Tammany Parish*, 336 F.3d 363 (5th Cir. 2003); *Kirkpatrick v. Whitley*, 992 F.2d 491 (5th Cir. 1993); *Faulkner v. Cain*, 133 F.Supp. 449 (E.D. La 2001).

### 2. The State does not dispute the underlying undisclosed facts which establish materiality.

The State disputes that the undisclosed report was material to Mr Hoffman's defense, asserting that "the presense or absence of lividity is not indicative of Mr. Hoffman's intent." Opposition at 26. However, the testimony at trial and expert affidavits submitted in state post-conviction and to this Court establish otherwise, and the state does not contest the facts which lead inevitably to that conclusion.

As the State pointed out in its Opposition, both the coroner's testimony at trial and Dr. Liuzza's post-conviction affidavit establish the same, well-known (to pathologists) principle: "movement of a body before lividity is fixed can prevent lividity from forming." Opposition at 25. Dr. MacKenzie, the coroner, testified at trial that he would expect to see lividity in a body that had lain in the same position for 12 hours. R. 3670. He reiterates this point in the affidavit submitted to this Court by the State: lividity at the time of autopsy suggests nothing about the position of the body when it was discovered, because lividity is not fixed if the body is moving. Affidavit of Dr. Fraser MacKenzie, 12/22/10, ¶ 7. Both the trial and habeas opinions of the State's expert and the affidavit of the defense expert unequivocally establish the exculpatory nature of the undisclosed report. That report established that there was no lividity on Ms. Elliot's body at the time it was discovered, and thus proved that it had moved since her death, and that she had not been shot and killed where she was found. This in turn supported the defense case based on Mr. Hoffman's confession that Ms. Elliot was killed during a struggle over the gun at the boat launch adjacent to the highway where Mr. Hoffman had intended to leave her alive.

When Dr. MacKenzie testified at trial, he did not know whether lividity was present on the body in the location it was discovered. Had he known lividity was not present, he would have testified that the lack of lividity was consistent with the body moving in the river after

death. Similarly, as he has done in post-conviction now that he has the benefit of the undisclosed report, Petitioner could have retained an independent pathology expert to explain this to the jury. Likewise, this undisputed scientific evidence and the post-conviction and trial record establishes the material nature of the undisclosed evidence, at both the guilt and penalty phases of trial.

As is set out in detail in the Habeas Petition, and evident from the record of Petitioner's trial, the sole defense at trial was that the victim was shot unintentionally. Based on Petitioner's statements to police, defense argued that there was a struggle for the gun at the boat launch, 150 feet upstream from where the dock where the body was found, the gun went off, and Mr. Hoffman fled the scene. Defense counsel theorized that the body had been washed down-stream by the tides. R. 4274-74. The State ridiculed the defense theory, arguing that there was *no evidence* of such a fantastical scenario;[2] that Mr. Hoffman had, with evil premeditated intent, formed well before the kidnapping of Mary Elliott, marched her naked down an overgrown, weed-ridden, trash-infested path to the distant dock where he shot and killed her, execution style, as he had planned all along.[3] The State's version of events was so critical to its case that it convinced the trial court to allow jurors to visit the scene, and see for themselves Ms. Elliott's march to death. The visit to the crime scene, according to the State, was necessary to make out its case of specific intent. R. 1242.

---

[2] Mocking the defense's case the prosecution argued in closing: "[t]hat body was left upriver and floated down and backed into that dock with its feet up. Can you believe that? You want to talk about stretching the evidence. There was no evidence of that." R. 4299.

[3] The State emphasized the march of death in argument at trial, and exhibited photos of and elicited testimony about the ominous pathway to the dock. State's Opening Statement, R. 3540; State's Closing Argument, R. 4229, 4255-56; State Exs. 40, 41; Trial Testimony Charles Dauzat, R. 3677-78; Trial Testimony Lt. Frey, R. 3691; Trial Testimony Sgt. Oswald, R. 3955-56.

The State does not, nor can it, contest the facts establishing the materiality of the Coroner's Investigator Report; those facts are based on the record itself. The State's bare assertion in habeas that the evidence was immaterial is contradicted by its own case at trial.

**B. The Pleadings and Evidence Before this Court Establish that the State Presented Misleading Testimony Material to Guilt and Punishment.**

The coroner's testimony at trial is a matter of record. The existence of the Coroner's Investigator Report is not contested—the State has simply denied that it had possession of the report at the time of trial.[4] However, because the report was in the file of an investigative arm of the State, the State should have known of its existence. The materiality of misleading testimony regarding lividity is demonstrated by the record of the trial itself—the State's arguments for conviction and a sentence of death and defense's arguments for second degree murder and a consequent sentence of life. Indeed, the State's argument to the jury for guilt and death were predicated upon this "death-march" theory—a theory that is directly contracted by 1) Mr. Hoffman's statement rejected by the jury asserting that the shooting had occurred at the boat launch and was accidental, and 2) the expert reports predicated upon the non-disclosed coroner's report.

Mr. Hoffman's defense, supported by his statements to police at the time of arrest, was that he intended to let Ms. Elliot go on a boat launch, right where the car was parked, but she struggled for his gun and it went off, killing her. The State argued, relentlessly, that his version was bunk, that Petitioner planned the murder well in advance of the kidnapping, that the shooting

---

[4] The fact that the State did not possess the report does not necessarily mean that prosecutors did not have knowledge that there was no lividity present on the body when it was discovered. Investigation conducted hastily at the time the report was discovered did not include interviews of trial prosecutors. Should the Court order an evidentiary hearing on claims pertaining to the investigator's report, Petitioner wishes to preserve his right to further discovery on the issue via depositions and/or interrogatories.

8

was no accident, and that the location of the body indicated that Mr. Hoffman intentionally marched the victim to her death down a long path taken for the sole purpose of executing her.

> From that location [where the car was parked], there is a distance of approximately 169 feet from the location of the parking area along this torturous, difficult, treacherous route consisting of debris, cane, bushes, things that you have to push through to get through in order to make your way this horrible 169 feet to the location where Molly Elliot's body was located….
>
> …This is how the scene looked on the day in question. It is an accurate representation of the scene. It's grown up with leaves, cane, grass. It's got trash, debris scattered around the parking area….
>
> …This is the view, State's Exhibit Number 40, of what Molly Elliot saw as she was walking toward the edge of that river, naked, cold, violated, degraded, and robbed, vulnerable, weak. She had to make her way through that path in the darkness at night, wondering what was going to happen to her.
>
> Another view, this is from the dock area looking back. This shows you the amount of growth they had to traverse and pass through as she took her last steps in life. It is not a pretty sight. It is the last sight she saw.

R. 4229-30.

> Now, he has just walked her in the dark of the night, because remember we are talking about 6:30, 7:00 Thanksgiving Eve. It is going to be dark at that time. He has walked her from this location in the parking area where the car was parked down that trail. At any point along that trail all he had to do was let her go, turn around, get back into the car and drive off. She was completely naked. She was cold. She had just been robbed, and she had just been raped. He walked her to the edge of the water. Why? To let her go? Is that what he was going to do, let her go?

R. 4255-56.

The State returned to the theme at sentencing, arguing again that the very walk down the path established specific intent and painting, step by step, the bleak horror of that final march:

> …she was then forced to walk approximately half the length of a football field to her death, through trash and filth, that others had dumped, barefoot. And as she approached the water, Jessie Hoffman pointed a gun at her, intending to kill her. And she laid on that dock, by the Middle Pearl River, cold, naked, dying, for ten to fifteen minutes before her heart stopped pounding.

R. 4384.

9

The state's strategy in bringing jurors to the scene[5] and repeatedly arguing circumstances of the death march was quite effective. Years later, the foreman of the jury recalled:

> During the guilt phase the jury was taken to the crime scene. This was important for me because it let me see the layout of the path which Jessie Hoffman made the victim walk down to reach the floating dock where she was killed. This was critical to my conclusion that Mr. Hoffman intended to kill the victim and had planned it all along. The path was hidden and out of the way. You had to walk a way round the wooded area from where he would have parked the car to get to that path. I don't think that anybody could have found that path in the dark unless they knew about it already. If, as the defense argued, he didn't intend to kill her but just intended to drop her off somewhere, he would have left her in the area where the car was or let her out somewhere else. The only logical reason for driving out all the way to the Pearl River and for walking the victim down that path would be that he intended from the start to kill her and hide the body.
>
> For this reason I thought that Jessie Hoffman planned to rob and kill the woman ahead of time.

Affidavit of Caroline Wallace (Interview with Gary McDonald, Jury Foreperson), Supplemental Petition Ex. 109.

But for the State's suppression of the favorable report, the jury would have had strong evidence to support the defense claim that the victim was shot by the road, and that no "death-march" had occurred. The due process requirement that jurors not be prevented by the State from considering material evidence favorable to the accused exists so that "the adversary system of prosecution [does not] descend to a gladiatorial level unmitigated by any prosecutorial obligation for the sake of truth." *Kyles*, 514 U.S. at 439. Mr. Hoffman's jury should have heard that the body of Mary Elliott likely was in movement prior to coming to rest on the dock where it was discovered, approximately 14 hours after she was shot and killed. Because jurors did not

---

[5] Prior to trial, the State sought and was granted an order to allowing the jury to view the crime scene. The visit to the crime scene was premised upon the State's assertion that "the nature and location of the crime scene is relevant evidence in this case which bears directly on the issue of specific intent." R. 1242.

hear the critical evidence pertaining to specific intent and whether the ultimate sentence of death should be imposed, Mr. Hoffman did not "receive[] a fair trial, understood as a trial resulting in a verdict worthy of confidence. *Id.* at 434. The uncontested facts before this Court merit granting the writ of habeas corpus without an evidentiary hearing.

**II.    IN THE EVENT PETITIONER DOES NOT PREVAIL ON CLAIM II ON THE PLEADINGS AND RECORD, AN EVIDENTIARY HEARING ON CLAIMS II AND III OF THE HABEAS PETITION IS MANDATORY.[6]**

Claims II and III of the Habeas Petition are interrelated and, while each claim merits relief on its own, in the event this Court does not find that either claim prevails on its own, the error cumulatively requires that habeas relief be granted.[7] Both Claim II, addressing the non-disclosure of favorable evidence and Claim III, addressing ineffective assistance of counsel, relate to the guilt phase of Petitioner's capital trial, but also to the essential question of moral culpability central to the penalty phase of trial. *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993) ("given the unanimity required at the Louisiana punishment phase, the proper frame of reference, at least with regard to the punishment assessed, is whether the mind of one juror could have been changed with respect to the imposition of the sentence of death").

In state court, as now, Petitioner alleged facts which if proven entitled him to relief. Petitioner, through no fault of his own, was prohibited from developing those facts at an

---

[6] Petitioner already addressed, and still maintains, that he is entitled to an evidentiary hearing on claims V, VI, VII, VIII, IX, X, XI, XII, XIV, XX, and XXI of the Habeas Petition. Habeas Petition at 22-30. There is no need to repeat those arguments herein. This Memorandum only addresses Claims II and III based upon considerations the Court raised in the December 10, 2010 status conference.

[7] Other claims also relate to prosecutorial misconduct and ineffective assistance of counsel and must also be considered cumulatively: Claim I (ineffective assistance of counsel at the sentencing phase of trial); Claim IV (prosecutorial misconduct); Claim V (failure to provide exculpatory evidence); Claim VIII (failure to voir dire jurors on racial bias); and Claim XVI (failure to challenge juror for cause).

evidentiary hearing. If Petitioner does not prevail on Claim II on the pleadings, an evidentiary hearing is mandatory.

Whether ineffective assistance of counsel, *Brady* violations, or both are under review, the fundamental question is whether errors committed during the course of the trial, considered together, rendered the trial unfair. The United States Supreme Court noted in *Strickland,* 466 U.S. at 696, that as with *Brady* claims "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged;" and in *Bagley*, 473 U.S. at 674-75 (1985), a progeny of *Brady*, the Court stated: "A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." *Id., quoting United States v. Agurs*, 427 U.S. 97 (1976).

Given the identical standards (of *Strickland* prejudice and *Brady* materiality) which implicate the same concern to protect the fundamental fairness of the proceeding, the cumulative impact of the *Brady* and *Strickland* errors should be considered together in determining whether Petitioner received a fair trial. *Strickler v. Greene*, 527 U.S. 263, 297 n.2 (1999) (Souter, J. and Kennedy, J., concurring in part and dissenting in part) ("the Court treats the prejudice enquiry as synonymous with the materiality determination under *Brady v. Maryland*"); *Mak v. Blodgett*, 970 F.2d 614, 622 (9th Cir. 1992) ("We do not need to decide whether these deficiencies alone meet the prejudice standard because other significant errors occurred that, considered cumulatively, compel affirmance of the district court's grant of habeas corpus as to the sentence of death"); *Gonzales v. McKune,* 247 F.3d 1066, 1078 (10th Cir. 2001), *vacated on other grounds*, 297 F.3d 992 (10th Cir. 2002) (the outcome of the trial "would likely have changed in light of a combination of *Strickland* and *Brady* errors, even though neither test would individually support a petitioner's claim for habeas relief"). In Claim II, as detailed *supra*, Petitioner asserts that the

State suppressed evidence (the Coroner's Investigator Report), that was favorable to Petitioner, and that prejudice ensued. In Claim III Petitioner asserts that trial counsel was ineffective in failing to investigate and present evidence that supported Mr. Hoffman's only defense at trial, and that prejudice ensued. The constitutional error centers on specific intent, the critical issue at trial.

Evidence discovered in post-conviction, detailed in *both* Claims II and III, refutes the compelling and devastating picture of the march to death that the State argued so persuasively at trial.

### A. Claim II

The materiality of the suppressed Coroner's Investigator Report, both to guilt and punishment, can be established by the state post-conviction record—including transcripts and affidavits. Indeed, the record of the trial itself—including the fervency with which prosecutors urged the jury, based on the march down a path never travelled, to sentence Mr. Hoffman to death—establishes the materiality of the suppressed evidence with respect to penalty. However, should there be any doubt as to the significance of the experts' testimony and the impact of the suppressed evidence on the culpability phase determination, the best way to resolve that doubt is through an evidentiary hearing.

### B. Claim III

To the extent the Court grants relief on Claim II, it may pretermit resolution of Claim III.[8] However, to the extent it does not grant relief outright on Claim II, it must not only consider

---

[8] See *Banks v. Dretke*, 540 U.S. 668, n. 10 (2004) ("0ur disposition of the Farr *Brady* claim, and our conclusion that a writ of habeas corpus should issue with respect to the death sentence, render it unnecessary to address Banks's claim of ineffective assistance of counsel at the penalty phase; any relief he could obtain on that claim would be cumulative.").

13

Claim III independently but also cumulate the prejudice from the non-disclosure and ineffective assistance of counsel.

The crux of this ineffective assistance of counsel claim is that counsel failed to investigate its own defense and therefore failed to uncover and present a wealth of evidence supporting Mr. Hoffman's version of the shooting.[9] What Mr. Hoffman told the police was true, but counsel never conducted an investigation into the tidal flats and environmental circumstances of the murder scene to establish that petitioner had told the police the truth when he described the location at which he said the victim was killed. Consequently, trial counsel provided deficient representation which prejudiced Petitioner.

The evidence counsel could have discovered had it conducted a proper investigation included: that the movement of the tide in the Middle Pearl River between the time of death and the discovery of the body explained how the victim could have been shot at the boat launch consistent with Mr. Hoffman's statement but floated from the boat launch to the dock; that the condition of the body established that the body had floated for a number of hours before it was discovered; that injuries to the knees were inflicted as a result of movement of the body in the water; that blood on the dock where the body was found was not blood spatter, contrary to the State's arguments at trial; and that several aspects of the State's version of the shooting could have been rebutted with expert pathologist and ballistics testimony.

The State dismisses the wealth of carefully-documented evidence submitted in state post-conviction as merely the statements of "alleged experts, not subject to cross-examination or

---

[9] The claim addresses other instances of ineffective assistance of counsel at the guilt phase as well: counsel's blame-the-victim defense, failure to present evidence explaining why Mr. Hoffman carried a gun to work, and failure to present a unified defense. Habeas Petition at 149-160. This error, too, must be cumulated when assessing materiality and prejudice.

qualification by the Court." Opposition at 27. This in and of itself appears to be a concession that an adversarial hearing is necessary. It then goes on to state that a strategic or tactical decision not to produce evidence or call witnesses does not constitute ineffective assistance of counsel. It does not assert, however, any real or imagined strategic reason why counsel in this case would fail to present evidence supporting the only theory of the defense to the jury. A simple evidentiary hearing before this Court would determine whether there was any strategic basis for not investigating the physical evidence to present a theory of defense that matched what the defendant told police.

### C. Petitioner's Entitlement to an Evidentiary Hearing on Claims II and III

AEDPA's limitations do not apply to Claims II and III. AEDPA limits circumstances in which a federal habeas court may conduct an evidentiary hearing, prohibiting hearings for petitioners who "failed to develop the factual basis" of their claims in state court. 28 U.S.C. § 2254(e)(2). However, the United States Supreme Court has determined that AEDPA does not prohibit an evidentiary hearing in federal court provided that the petitioner is not at fault for the lack of factual development in state court. *Williams v. Taylor*, 529 U.S. 420, 426 (2000). *See also Guidry v. Dretke*, 397 F.3d 306, 323 (5th Cir. 2005) ("if a petitioner develops a factual basis for a claim in state court (or sufficiently attempts to do so), subpart (e)(2) does not bar an evidentiary hearing in district court.").

Petitioner made extensive efforts to develop the factual basis of Claims II and III in state court. He investigated the facts; he requested and obtained records (using requests under the Louisiana Public Records Act, La. R.S. 44:1, *et seq*, signed releases and/or court orders where appropriate); he interviewed witnesses, and consulted with experts. He filed a detailed Amended Supplemental Petition alleging habeas claims II and III, attached numerous records, declarations

15

and expert reports in factual support of them, and requested an evidentiary hearing in state court. Amended Supplemental Petition.[10] The district court did not give reasons for its failure to grant Petitioner a hearing on the claims raised in his Amended Supplemental Petition; the court never addressed the claims at all.

Petitioner also requested that the Louisiana Supreme Court order an evidentiary hearing on the claims. LASC Writ; LASC Supplemental Writ. The Louisiana Supreme Court denied Petitioner's Writ without a written opinion, and without ordering a hearing on any claim. *State v. Hoffman,* 2007-1913 (La. 12/12/08); 2008 La. LEXIS 2791.

Where § 2254(e)(2) does not bar a hearing, the pre-AEDPA decision of *Townsend v. Sain,* 372 U.S. 296 (1963) still controls a habeas petitioner's entitlement to an evidentiary hearing.[11] Under *Townsend,* an evidentiary hearing is *mandatory* provided that he alleges facts, which if proven, would entitle him to relief, *and* if he proves one of six factors:

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

---

[10] A number of the documents and declarations relied upon by Petitioner in his Amended Supplemental Petition had already been presented to the state court in connection with claims raised in his prior Supplemental Petition, and were incorporated by reference into the Amended Supplemental Petition; other documents, including the coroner's investigator's report and reports of forensic experts were attached to the Amended Supplemental Petition.

[11] *Bacon v. Lee*, 225 F.3d 470, 489 (4th Cir. 2000) (quoting *Fisher v. Lee*, 215 F.3d 438, 454 (4th Cir. 2000)); *Baja v. Ducharme*, 187 F.3d 1075, 1078-79 (9th Cir. 1999) (citing cases). *Baja* and the cases cited therein were cited with approval by the Supreme Court in *Michael Wayne Williams v. Taylor*, 120 S. Ct. 1479, 1488 (2000).

*Id.* at 313. Petitioner has alleged facts, which if proven, would entitle him to relief. The state court never made any ruling; it reached neither the merits of the facts nor a resolution of the legal claims. The state court disposition of the claims warrants a mandatory evidentiary hearing under *Townsend*.

To the extent he does not prevail on the pleadings and documents alone submitted on Claim II, Petitioner is entitled to *de novo* review of Claims II and III by this Court as well as further discovery concerning the suppression of the coroner's report and an evidentiary hearing for the Court to consider both the materiality of the suppressed evidence and the lack of a strategic basis for the failure to investigate the matter further. .

                Respectfully submitted,

                /s Sarah Ottinger
                Sarah Ottinger, La. Bar No. 24589
                Caroline Tillman, La. Bar No. 31411
                Capital Appeals Project
                636 Baronne Street
                New Orleans, LA 70113
                (504) 529-5955

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this Memorandum has been served via electronic notification from the clerk of court for delivery upon Respondent through Assistant District Attorney, Kathryn Landry, P.O. Box 82659, Baton Rouge, LA 70884 on this 30th day of December, 2010.

                /s Sarah Ottinger
                Sarah Ottinger