**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

---

**JESSIE HOFFMAN # 400473**
        **Petitioner**

**v.**

**BURL CAIN, Warden,**
        **Louisiana State Penitentiary,**
        **Angola, Louisiana,**
        **Respondent**

**NO. 09-3041**

**SECTION "B"**

---

**MEMORANDUM IN OPPOSITION TO THE STATE'S MOTION TO LIMIT EVIDENTIARY HEARING**

Now into court, through undersigned counsel, comes Petitioner and respectfully submits this memorandum opposing the State's *Motion to Limit Evidentiary Hearing*.

1. On January 27, 2011, the Honorable Court ordered that a hearing be held on Petitioner's Habeas Petition, including a hearing on the exhaustion issue as well as an evidentiary hearing on all underlying issues, if necessary.

2. On April 7, 2011, the State filed a *Motion to Limit Evidentiary Hearing* ("State's Motion"), and an accompanying *Memorandum* ("State's Memorandum"), asking that the Court limit the hearing to oral argument only, in light of the recent United States Supreme Court decision in *Cullen v. Pinholster,* 131 S.Ct. 1388 (2011).

3. *Pinholster* does not have the far reaching effect that the State suggests, and does not bar Petitioner from presenting evidence necessary to prove his claims. Indeed, the central issue the Court addressed in *Pinholster* is entirely inapplicable to Petitioner.

4. Pinholster sought to introduce new allegations and new evidence in federal court, never introduced in state post-conviction proceedings, to establish that the state court's decision was

1

unreasonable under 28 U.S.C. §2254(d)(1).[1]  Pinholster had been denied relief on an ineffective assistance of counsel claim following a state court evidentiary hearing.  In federal habeas proceedings, he introduced *new evidence, never introduced in state court proceedings*, to prove that the state court's decision was unreasonable under §2254(d)(1).  131 S.Ct. at 1396-97.[2]  Naturally, the United States Supreme Court found that the habeas court should not consider *new evidence* in reviewing the state court's decision for reasonableness: "review under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Id.* at 1398.

5.  The State completely disregards one critical point in its Motion and Memorandum.  **Mr. Hoffman has presented the identical claims and allegations of fact in his Habeas Petition as those presented to the state court.**  He has asked this court to review only what has been presented to the state court in determining whether the state court's decision was unreasonable under §2254(d)(1).  *Cf. Hearn v. Ryan* 2011 U.S. Dist. LEXIS 43504 (D. Ariz. April 21, 2011) (court determined unreasonableness before ordering evidentiary hearing, so *Pinholster* did not bar evidentiary hearing).

6.  Furthermore, the State's recent Motion and Memorandum divert attention from 1) claims not subject to any *Pinholster* analysis at all, and 2) claims that Mr. Hoffman agrees do not require an evidentiary hearing because the unreasonableness of the state court's decision as well as the merits of the claim are proven on the record.

---

[1] §2254(d) provides, in relevant part: "An application for a writ of habeas corpus… shall not be granted with respect to any claim that was *adjudicated on the merits in State court proceedings* unless the adjudication of the claim  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." (emphasis supplied).

[2] The new evidence consisted of testimony of two experts, a psychiatrist and pediatric neurologist, who made new diagnoses of Petitioner—diagnoses that had not been presented to the state court.  *Id*. at 1397.

7.  Five of Petitioner's habeas claims were raised in state court and, through no fault of Petitioner, never adjudicated on the merits. *Pinholster* does not apply at all to claims which were not "adjudicated on the merits" in state court.  Indeed, §2254(d) only applies to claims that were "adjudicated on the merits in State court proceedings."   As the *Pinholster* Court itself made clear, its decision concerns the application of that provision, and therefore has no relevance at all to claims that were not "adjudicated on the merits."   *See Pinholster,* 131 S.Ct. at 1401-1402. These include Claims II and III which were presented to the state court but were not ruled upon, and Claims XIV, XIX, and XX  which were dismissed without prejudice by the state court.

8.  Petitioner does not seek to present evidence on Claims IV, V, VIII, XIII, X, XV, XVI, XVII, and XVIII.  With respect to those claims, Mr. Hoffman meets the unreasonableness requirements of §2254(d)(1) and/or (2) based on the state court record as *Pinholster* requires, and those claims merit relief with no need for an evidentiary hearing.

9.  Furthermore, *Pinholster* does not bar Mr. Hoffman's presentation of evidence in support of several claims which were adjudicated on the merits.  All told, the universe of claims to which *Pinholster* arguably has relevance is limited and only includes five (5) of twenty (20) habeas claims (VI, VII, IX, XI, and XII).   *Pinholster* does not change the threshold or standards governing Mr. Hoffman's right to an evidentiary hearing in federal court.  His right to an evidentiary hearing to prove the merits of the five claims, as ordered by this Court, is therefore unaffected.  *Hearn v. Ryan* 2011 U.S. Dist. LEXIS 43504 (D. Ariz. April 21, 2011) (court determined unreasonableness before ordering evidentiary hearing, so *Pinholster* does not bar evidentiary hearing).


I.      CLAIM I -- MR. HOFFMAN HAS NOT REQUESTED A HEARING ON INEFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING—NO

NEW FACTS ARE PLED IN THIS COURT AND THE STATE COURT RECORD DEMONSTRATES BOTH THAT IT UNREASONABLY DENIED RELIEF AND THAT MR. HOFFMAN IS ENTITLED TO HABEAS RELIEF.

10. One of the most egregious constitutional violations in a capital case is trial counsel's failure to provide effective assistance of counsel at sentencing. When counsel abdicates his constitutional and ethical obligation to conduct reasonable investigation and place readily available, overwhelmingly mitigating evidence before a jury, a defendant is deprived of not just a constitutional right, but of life itself.

11. Mr. Hoffman was granted a hearing in state court on ineffective assistance of counsel at sentencing. The state court unreasonably ignored evidence establishing that counsel, as a result of trial "preparation" that *did not even include interviewing Mr. Hoffman's mother*, presented a completely inaccurate picture of Petitioner at sentencing. Witnesses at trial testified that Mr. Hoffman's childhood was peaceful and unremarkable. The State capitalized on this inaccurate picture to exhort the jury to sentence Mr. Hoffman to death: "Jessie had a good upbringing, with people who loved him. He had opportunity available to him. He has no excuse for what he did to Molly Elliot." R. 4519-20.

12. In stark contrast to this picture, post-conviction evidence presented to the state court through testimony and documentation established that Jessie's childhood was filled with horror. He was subject to severe physical, sexual, and emotional abuse by his mother, severe physical abuse by his father, an environment of privation and poverty, full of violence and chaos that no child should endure. The jury heard none of this—nor evidence of mental illness—because counsel did not perform investigate mitigation. Habeas Petition, Claim I.

13. Unlike Pinholster, Mr. Hoffman has not asked this Court for an evidentiary hearing on ineffective assistance of counsel at sentencing. He does not seek to produce further evidence not

produced in state court.  The evidence presented to the state court, the evidence pled in his Habeas Petition based on state court proceedings, establishes without an evidentiary hearing that the state court's denial of sentencing relief was contrary to and an unreasonable application of clearly established federal law, as well as an unreasonable determination of the facts in light of the evidence presented.  The state court turned a blind eye to the law and the facts and unreasonably denied post-conviction relief.

14. *Pinholster* is inapplicable to Claim I.  This Court should examine the law, examine the facts presented in state court, examine the state court's wrong and inaccurate decision denying relief, and vacate Mr. Hoffman's sentence of death.

**II.    CLAIMS II AND III -- *PINHOLSTER* DOES NOT AFFECT THE HEARING ORDERED BY THIS COURT AS TO THESE CLAIMS BECAUSE THEY WERE NOT "ADJUDICATED ON THE MERITS" BY THE STATE COURT.**

15. Petitioner's guilt phase *Brady/Napue* claims and guilt phase ineffective assistance of counsel claims are not subject to *Pinholster* at all, and this Court's order for evidentiary hearing in relation to those claims must stand.  Petitioner raised these claims to the state post-conviction court.[3]  Without waiting for the court to order a response, the State filed an Answer disputing the merits of those claims.  However, the state post-conviction court did not rule upon the claims at

---

[3] Petitioner alleged that the State suppressed exculpatory evidence about the condition of the victim's body when it was found, evidence which was material to the question of where the victim was killed, and the State's theory of specific intent that the defendant "death marched" her down a long overgrown path, to her execution.  In support of his *Brady* allegations, Petitioner attached the coroner's investigators report containing the suppressed information, together with an expert report explaining its forensic significance.  Relying on the record of trial, Petitioner further alleged that, the State capitalized on its *Brady* violation by presenting misleading testimony and argument, in violation of *Napue v. Illinois.*  Finally, Petitioner alleged that his trial counsel provided ineffective assistance for failing to investigate and present a wealth of other evidence supporting their case against specific intent, that that the victim was accidentally shot further up-river, and floated to the location in which she was found.  Petitioner cited professional standards applicable at the time of trial which required thorough investigation of defenses and utilization of experts, and he attached documentary evidence including reports from experts in several forensic disciplines, demonstrating the difference these simple efforts would have made to Petitioner's defense. Amended Supplemental Petition.

all. Therefore, they were not "adjudicated on the merits" for the purposes of §2254(d) and *Pinholster* does not affect this Court's order for evidentiary hearing, as to these claims. *Pinholster*, 131 S.Ct. at 1401-1402.

16. The State continues to dispute exhaustion of these claims, on the spurious basis that Petitioner's claims were not "fairly presented" to the state court because he did not attach a draft order to his Amended Petition, setting the petition down for hearing. State's Motion, at at 4-7. The State cites no authority for such a rule, and there is none.[4] The claims are clearly exhausted. *See Memorandum of Law on Exhaustion of Claims II and III*, 12/24/10. However, the State also mistakenly argues that if the claims are found to be exhausted, then they necessarily were summarily "adjudicated on the merits" and therefore subject to *Pinholster*. State's Motion, at 5. That is not so. A claim can be both exhausted, and *not* "adjudicated on the merits." Exhaustion requires only that the petitioner "fairly present" the claim to the state court providing "meaningful opportunity" for the state courts to consider the allegations. *Vasquez v. Hillery,* 474 U.S. 254, 257 (1986). What the state court then does is irrelevant. *Smith v. Digmon,* 434 U.S.

---

[4] The State did not object to the form of his filing at the time, but answered the claims on the merits, and without raising any procedural objection. Response to Amendment to Supplemental Petition for Post-Conviction Relief, 5/2/07. Furthermore, Louisiana's post-conviction statute which prescribes the requirements for post-conviction applications, contains no such rule. La C.Cr.P. art. 926. The 33-page Uniform Application for Post-Conviction Relief, approved for use by the Louisiana Supreme Court pursuant to La. C.Cr.P. art. 926.D, contains no such rule either. Appendix A. Rules of Supreme Court of Louisiana. Neither do the Rules for Louisiana District Courts or the local rules for the 22nd Judicial District set out in the Appendices of the Rules for Louisiana District Courts. Moreover, such a rule was not applied to Petitioner's two other applications, (his initial *pro se* Petition for Post-Conviction Relief, 7/20/01 ("Initial Petition") and Supplemental Petition), neither of which had such an order attached, but both of which were acted upon by the state court (Order, 6/26/02 (by letter) setting status conference as to the Initial Petition; Notice of Assignment, 3/10/04, setting status conference as to Supplemental Petition). Furthermore, Petitioner's own research of randomly selected post-conviction cases in St. Tammany Parish, revealed no such practice either. *See, e.g.. State ex rel. Higgins v. Cain,* Parish of St. Tammany, 22nd Judicial District Court Div H, No. 337854 (Application for Post-Conviction Relief 6/23/06 and Supplemental Application 8/10/06, both filed without draft order attached, and Judge Fendlason adjudicated all the claims on the merits, Reasons for Judgment, 9/13/06) (federal court proceedings at *Higgins v. Cain,* 2010 U.S. Dist. LEXIS 136631 (E.D.La. Dec. 3, 2010); *State ex rel. Gonzales v. Cain,* Parish of St. Tammany, 22nd Judicial District Court Div. E, No. 243472-1 (Application for post-conviction relief filed 12/20/07 without order and state court acted on petition ordering State to respond to certain claims, 1/4/08); *State ex rel. Casborn,* Parish of St. Tammany, 22nd Judicial District Court Div. E, No. 329935 (Application for Post-Conviction Relief filed 1/12/09 without order attached, state court acted on it denying it as out of time, 1/21/09). The rule does not exist.

332 (1978) ("whether the exhaustion requirement… has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief").  Conversely, "adjudicat[ion]" of a claim under §2254(d) clearly requires the state court to take action and issue a ruling. *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (claim not ruled upon was "not adjudicated on the merits" and therefore not subject to §2254(d)); *Holloway v. Horn*, 355 F.3d 707, 718 (3d. Cir. 2004) (finding claim was exhausted but not "adjudicated on the merits" and therefore not subject to §2254(d) where claim was raised on direct appeal but state court decision did not mention claim); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003) (§2254(d) inapplicable to aspects of claim that were presented to state court, but not ruled upon).  Here, Claims II and III are exhausted because Petitioner fairly presented them, but they were not "adjudicated on the merits" because the state court failed to rule on them.  The limitations on relief under §2254(d) do not apply, *Pinholster* does not apply, and Mr. Hoffman entitled to *de novo* review which necessarily includes the evidentiary hearing this Court has already ordered.[5]

**III.    CLAIMS XIV, XIX, XX - *PINHOLSTER* DOES NOT AFFECT THE HEARING ORDERED BY THIS COURT AS TO CLAIMS XIV, XIX AND XX BECAUSE THEY WERE NOT "ADJUDICATED ON THE MERITS" BY THE STATE COURT.**

17. Petitioner's Claim XIV (execution of mentally ill offenders violates the Eighth Amendment), Claim XIX (Louisiana's clemency procedures violate Due Process) and Claim XX

---

[5] Petitioner believes his allegations are proven based on the record already before the Court.  However, if the Court finds his proof lacking, he is entitled to present further proof at the hearing.  He diligently requested a hearing in state court, and therefore satisfies §2254(e)(2). *Williams.*  No question he "alleged facts, which if proven, entitle him to relief", and this Court has the power to hear his evidence. *Townsend v. Sain*, 372 U.S. 293, 312 (1963) ("where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence.") The state court's failure to address his claims at all, makes such hearing mandatory. *Townsend v. Sain*, 372 U.S. 293, 313 (1963) ("There cannot even be the semblance of a full and fair hearing unless the state court actually reached and decided the issues of fact tendered by the defendant") (finding hearing mandatory where state court failed to resolve factual disputes at all).

(Louisiana's lethal injection procedures violate the Eighth Amendment) are also not subject to *Pinholster*. Petitioner raised these claims to the state post-conviction court. The state court ordered the state to respond, thereby finding that his claims, if established as alleged, merited relief. La. C.Cr.P. art. 927 (requiring the state court to order an Answer only if a petitioner has pled a legal and factual basis that entitles him to relief if established); *see also infra*, at 11-13. However, the state post-conviction court dismissed the claims "without prejudice" for lack of ripeness. State Court Order, 5/1/08. They were therefore not "adjudicated on the merits" and must received *de novo* review. *Pinholster* does not apply. *Pinholster,* 131 S.Ct. at 1401-1402.

18. Petitioner's claim that his execution is prohibited by the Eighth Amendment because he is a volitionally incapacitated offender is clearly established based on existing record alone. As Petitioner argued in state court, the evidence presented at the hearing on his ineffective assistance of counsel claim, demonstrates his volitional incapacitation at the time of the crime, and that he therefore falls within a class which the evolving standards of decency find repugnant to execute. Supplemental Petition at 164-171. A hearing is not requested, nor required on this claim.

19. In contrast, Petitioner's lethal injection and clemency claims do require evidentiary development at a hearing. Petitioner alleged that Louisiana's lethal injection procedures create an intolerable risk of unnecessary pain, in a variety of ways, in violation of the Eighth Amendment, Supplemental Petition at 203-217, and that Louisiana's clemency procedures, as applied, violate Petitioner's rights to due process. Supplemental Petition at 201-203. The claims can only be properly determined after an evidentiary hearing and discovery pursuant to which the current execution protocols and clemency procedures could be identified and the unconstitutional nature of their practical applications could be demonstrated. The state court dismissed them

without prejudice and without a hearing.  Petitioner was diligent in presenting his claims under §2254(e)(2), and given the failure of the state court to determine the facts at all,  an evidentiary hearing before this court is mandatory under *Townsend.*

**IV.** **CLAIMS VI, VII, IX, XI, AND XII -** *PINHOLSTER* **DOES NOT BAR THE EVIDENTIARY HEARING THIS COURT ALREADY ORDERED ON THE CLAIMS THAT WERE "ADJUDICATED ON THE MERITS" WHICH MAY REQUIRE THE PRESENTATION OF FURTHER EVIDENCE TO RESOLVE REMAINING FACTUAL QUESTIONS**

20. Several claims that were "adjudicated on the merits" without an evidentiary hearing require the presentation of evidence.   These include Claim VI (Batson), Claim VII (discrimination in selection of grand  jury forepersons), Claim IX (racial bias of juror), Claim XI (improprieties during crime scene visit), and Claim XII (juror misconduct).  *Pinholster* does not prevent a hearing on any of these claims; for each claim, Petitioner has satisfied the limitations on relief contained within §2254(d) based on the state court record alone, and this Court has already resolved to determine the ultimate merits of those claims after an evidentiary hearing. The State's argument to the contrary is based on two mistaken assumptions: first that *Pinholster* completely bars hearings in federal habeas corpus, State's Memorandum, at 2-3, and second that Petitioner was given full opportunity to develop his claims in state court.  State's Memorandum, at 4.  Neither is true.

**A. *Pinholster* does not abolish federal court hearings**

21. Contrary to the State's misleading assertion, the Supreme Court in *Pinholster* did *not* hold that "federal habeas review [does not permit] consideration of evidence introduced in an evidentiary hearing before a federal habeas court." State's Memorandum*,* at 2.  *Pinholster does not change the threshold requirements for evidentiary hearing in federal court*.  Rather, it clarifies the scope of the record the federal court should consider in making determinations under §2254(d)(1), holding that it is limited to the state court record. *Id.* at 1400.  *Pinholster* did not

render federal habeas hearings obsolete. As the State itself goes on to acknowledge, the *Pinholster* Court made clear that the federal evidentiary hearing provision "continues to have force where § 2254(d)(1) does not bar federal habeas relief." *Pinholster*, 131 S. Ct. at 1401; *see* State's Memorandum at 3. When claims *were* "adjudicated on the merits" in state court, and "where §2254(d) does not bar federal relief," i.e. the state court record establishes that it unreasonably denied relief, and evidentiary hearing is still in order to offer proof of claims already pled in state court. *See Hearn v. Ryan* 2011 U.S. Dist. LEXIS 43504 (D. Ariz. April 21, 2011) (evidentiary hearing not barred under *Pinholster,* where state court record showed that the state's court's decision on *Farretta* claim was "contrary to clearly established federal law" under §2254(d) and federal hearing required to determine unresolved issue of whether the defendant waived his *Faretta* rights).

22. Indeed, §2254(d) is only a threshold standard which limits the circumstances in which relief may be granted for meritorious claims. The ultimate question before the habeas court remains whether a Petitioner's substantive constitutional claims are meritorious. Once Petitioner has satisfied §2254(d) based upon the state court record, and the limitations to habeas corpus relief imposed by that subsection are removed, the federal court must then go on to consider whether an evidentiary hearing is required or needed to factually develop the record for the Court's ultimate determination of the substance of his claims. *Hearn, supra.*

23. The law governing determination of the need for a hearing is otherwise unaffected by *Pinholster*; a petitioner must meet the diligence requirements of §2254(e)(2); the mandatory grounds for hearings under *Townsend v. Cain,* remain applicable, and the Court retains discretion to order hearings even if the mandatory grounds are not met wherever Petitioner "pled claims, which if established, entitle him to relief." *Townsend v. Sain*, 372 U.S. 293, 312 (1963) ("where

an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence.") Petitioner demonstrates below that he has satisfied the requirements of §2254(d) on each of the claims based on the state court record alone as *Pinholster* directs. To the extent that §2254(d) does not encompass a finding that the merits of the claims are proven, the Court's prior order for a hearing remains valid. Mr. Hoffman meets the mandatory hearing grounds under *Townsend* and the evidentiary hearing ordered by this Court must stand.

**B. Petitioner satisfies §2254(d) based on the state court record and is entitled to an evidentiary hearing to prove Claims VI, VII, IX, XI, and XII, as this Court has already ordered.**

24. First and foremost, Petitioner believes that his claims as alleged in state court merit relief. However, to the extent that the Court determines that factual disputes remain, he is entitled to prove them at the hearing ordered by this Honorable Court. Petitioner satisfies the requirements of §2254(d) for each of his claims based upon the state court record, as *Pinholster* requires.

**Louisiana's post-conviction law establishes that the state court *already* found that Claims VI, VII, IX, XI, and XII were meritorious as pled.**

25. In accordance with Louisiana post-conviction procedure, Petitioner filed applications for post-conviction relief, laying out the "grounds upon which relief is sought" and "specifying with reasonable particularity the factual basis" for relief. La C.Cr.P art. 926.B(3).[6] The factual bases he pled were supported and elucidated by numerous witness declarations, records, expert reports, and other documents attached to the petition. For example: facts presented in support of juror misconduct claims included the content of signed statements from jurors outlining misconduct; facts presented in support of his claim of discrimination in the selection of the grand jury

---

[6] Rules governing Louisiana post-conviction procedure can be found at La. C.Cr.P. arts. 930 *et seq*.

foreperson included data which demonstrated the under-representation of black people over a significant period among grand jury forepersons selected to serve in St. Tammany Parish.

26. Under La. C.Cr.P. art. 927, the state court was then obliged to assess Mr. Hoffman's application to determine whether the allegations presented, if established, would entitle him to relief. If it found that any of his claims, if established as alleged, would *not* entitle him to relief, the court was obliged to dismiss the claim. If the court found that his allegations would entitle him to relief if established as alleged, the court was obliged to order the State to respond. *See* La. C.Cr.P. arts. 927.[7] The court did not dismiss any of Mr. Hoffman's claims but instead ordered the State to respond to the petition. The state court therefore had determined that Mr. Hoffman's claims, "if established as alleged," "would entitle the petitioner to relief."

27. Following the State's Answer, and Petitioner's response to it, the state court was next obliged to decide whether evidentiary hearing should be ordered under La. C.Cr.P. art. 930, or whether the factual and legal issues could be resolved based on the record, under La. C.Cr.P. art. 929.[8] Under Louisiana Supreme Court precedent, an evidentiary hearing *must* be held whenever the state contests a factual issue of significance to the outcome. *Tassin v. Whitley,* 602 So.2d 721, 722-723 (La. 1992) ("When there is a factual issue of significance to the outcome that is

---

[7] La. C.Cr.P. art. 927 provides, in relevant part: "A. If an application alleges a claim which, if established, would entitled the petitioner to relief, the court shall order the custodian, through the district attorney…. to file any procedural objections he may have or an answer on the merits if there are no procedural objections, within a specified period not in excess of thirty days… B. In any order of the court requiring a response by the district attorney pursuant to this Article, **the court shall render specific rulings dismissing any claim which, if established as alleged, would not entitle the petitioner to relief, and shall order a response only as to such claim or claims which, if established as alleged, would entitle the petitioner to relief.**" (emphasis added).

[8] Article 929 allows the state court to grant or deny relief without a hearing, "if the court determines that the legal and factual issues can be resolved based upon the application and answer, and supporting documents, including relevant transcripts, depositions, and other reliable documents submitted by either party or available to the court." The statute also provides for expansion of the record to facilitate resolution without hearings. La. C.Cr.P. art 929.B. However, under article 930, where questions of fact cannot be resolved based on the record alone, the court must hold an evidentiary hearing. La.C.Cr.P. art 930.

sharply contested, the trial court will not be able to resolve the factual dispute without a full evidentiary hearing.")

28. The State in some instances disputed facts of significance to the outcome of Petitioner's claims.  In other cases, the State's Answer did not address the facts at issue, side-stepping the issues with wrongly applied law.  Without any further inquiry into facts pled by Petitioner, which the court already found to merit relief if proven, the court denied Petitioner's request for hearings.  Without further proceedings, it summarily denied the claims.  The state court's summary denial on the merits, having already found claims meritorious if proven, was entirely illogical and unreasonable.  Having found that Petitioner's claims, if established, would entitle him to relief, and absent supported allegations by the State that the facts alleged were untrue, the state court was bound to either allow Mr. Hoffman to prove the facts at an evidentiary hearing or, in the alternative, to grant outright relief without an evidentiary hearing.

**Claim VI – Nothing in *Pinholster* prevents this Court from conducting an evidentiary hearing on Petitioner's *Batson* claim, except to the extent this Court finds it is already proven and merits relief on the record alone, because the state court record demonstrates that denial of the claim was unreasonable under §2254(d).**

29. Petitioner's *Batson* claims were "adjudicated on the merits" and are therefore subject to review under §2254(d), based upon the state court record.  *Pinholster.*

30. In state court proceedings, Petitioner established purposeful discrimination by the prosecution when it excluded the only two eligible blacks from his jury, relying on evidence that the Supreme Court has consistently recognized as proof of discrimination.[9]  Supplemental

---

[9] His allegations included evidence that: **the prosecution used its peremptory strikes to remove the all eligible black venire members**, *Batson v. Kentucky,* 476 U.S. 79, 95 (1986) ("Proof of systematic exclusion from the venire raises an inference of purposeful discrimination because the "result bespeaks discrimination") (citing *Hernandez v. Texas,* 347 U.S. 475, 482 (1954)); *Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 266 (1977); *Snyder v. Louisiana,* 128 S. Ct. 1203 (2008) (prosecution's use of peremptories to remove all eligible

Petition, Claim II; Supplemental Petition, Exs. 102-103. *See* Habeas Petition, Claim VI. Cumulatively, this evidence was too powerful to conclude anything except that purposeful discrimination motivated the State's strikes. The state court's decision to deny relief was an unreasonable determination of the facts, and relief is warranted without a hearing. §2254(d)(2).[10]

---

blacks was evidence of discrimination); **the prosecution struck blacks who were favorable to the state,** *Miller-El v. Dretke,* 545 U.S. 231, 257 (2005) ("[juror] should have been an ideal juror in the eyes of a prosecutor seeking a death sentence, and the prosecutors' explanations for the strike cannot reasonably be accepted"); *Reed v. Quarterman,* 2009 U.S. App. LEXIS 579 (5th Cir. 2009) (fact that prospective juror appeared to be an ideal juror for the state, confirmed implausibility of State's race-neutral reasons for strike); **the State failed to strike similarly situated nonblack jurors and nonblack jurors who were less favorable to the State;** *Miller-El II,* 545 U.S. at 241 ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step") (*citing Reeves v. Sanderson Plumbing Products, Inc.,* 5230 U.S. 122, 147 (2000); *Miller-El I,* 123 S.Ct. at 1029 (same); *Snyder v. Louisiana,* 128 S. Ct. 1203, 1211-1212 (2008) (finding *Batson* violation in part because State did not peremptorily strike similarly situated jurors); **the prosecution mischaracterized the prospective jurors' testimony and gave race-neutral reasons for striking both jurors that were contradicted by the record,** *Miller-El II,* 545 U.S. at 243-244 (proffered reasons based on mischaracterization of juror testimony indicated prosecutor's "ulterior reason"); *Snyder,* 128 S. Ct. at 1207-1208 ("the prosecution's proffer of this pretextual explanation naturally gives rise to an inference of discriminatory intent.")(finding *Batson* error where the prosecutor's alleged reasons for concern were not borne out by the record and were "implausible," "unconvincing," and "suspicious"); *Batson,* 476 U.S. at 98 (the neutral explanation must be actually "related to the particular case to be tried"); **the prosecution disparately questioned black and white jurors in a manner designed to elicit plausibly neutral grounds for a peremptory strike,** *Miller-El II,* 545 U.S. at 255; *and see: Miller-El I,* 123 S.Ct. at 1037 (same); **the State took other steps to limit the number of blacks on the jury, (choosing St. Tammany Parish as venue, rather than Orleans), and its proffered race neutral reasons for doing so were also contradicted by the record,** *Miller-El II,* 545 U.S. at 253 (state's exercise of jury shuffle in a way calculated to limit number of African-Americans on the panel, indicated discriminatory intent, given state's failure to offer a valid race neutral reason for doing so); **the State's case was constructed in a way which was designed to appeal to white jurors from St. Tammany parish,** *Batson,* 476 U.S. at 93 (1986) (trial court must undertake "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available"); *Miller-El II,* at 251-252 (court should assess plausibility of prosecutor's reasons "in light of all evidence with a bearing on it"); *Snyder,* 128 S. Ct. at 1208 ("all of the circumstances that bear upon the issue of racial animosity must be consulted") *see State v. Snyder,* 1998-1078 (La. 9/06/06); 942 So. 2d 484, 506 (Johnson, J., dissenting from denial of Batson challenge) (prosecutor's use of racially inflammatory statements at trial was evidence of prosecutor's discriminatory intent in striking blacks from the jury), *denial of Batson claim, overruled, Snyder,* 128 S. Ct. 1203; **evidence of the District Attorney's Office's long-standing policy of race-based strikes**, *Swain v. Alabama,* 380 U.S. 202 (1965) (requiring proof of systematic exclusion of blacks over a period of time to establish a prima facie case); *Batson,* 476 U.S. 79 (overruling *Swain's* requirement for historical practice evidence but continuing to recognize it as evidence of discrimination); *Miller-El I,* at 1036 (evidence of historical policy of excluding blacks "casts doubt on the legitimacy of the motives underlying the State's actions"); *Miller El II,* at 240 (taking into account evidence of historical policy of DA's office of striking blacks, presented at pretrial *Swain* hearing, in finding discrimination under *Batson*).

[10] *Batson v. Kentucky,* 476 U.S. 79, 93 (1986) (trial court must undertake "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available"); *Miller-El II* (viewed cumulatively, evidence of disparate questioning, systematic exclusion of nearly all blacks, assertion of pre-textual reasons contradicted by the

31. If the Court finds that his allegations were not fully proven based on the state court record, *Pinholster* does not bar a hearing, and Petitioner is entitled to present his proof, having been unreasonably denied that opportunity in state court.  As the state record reveals, having found that Petitioner pled facts which if proven entitled him to relief, nothing the State argued, in light of the record as a whole, reasonably allowed the court to then summarily deny his claims. Its decision was an unreasonable application of the law and determination of the facts. §2254(d); *Pinholster.*

32. Petitioner's allegations to the state post-conviction court relied in large part on the record on appeal.  In addition, he pled *Swain* evidence demonstrating the St. Tammany Parish District Attorney Office's long-standing policy of excluding blacks from jury service—data showing that over a fifteen year period, the DA's office struck black people three times more often than whites, and that the statistical likelihood of this occurring by chance, rather than due to race, was one in a billion.  Supplemental Petition, Claim II; Supplemental Petition, Exs. 102-103. Petitioner alleged that this new evidence cast the *Batson* claims denied on appeal in a new light, required the state court to reassess the prosecution's motivation for the strikes, and, combined with all the other indicia of discrimination, demonstrated that the prosecution's peremptory strikes of two black prospective jurors were motivated by race. Petitioner asked for relief, or in the alternative, a hearing to further substantiate his *Swain* evidence.

33. The state court ordered the State to respond, finding that Mr. Hoffman had alleged claims, which if established as alleged, entitled him to relief.  La. C.Cr.P. art. 927.  In its Answer,

---

record, failure to strike similarly situated jurors, other actions taken to reduce the number of blacks on the jury, and evidence of historical policy of excluding blacks, "the direction of the evidence was  too powerful to conclude anything but discrimination," and that state court's conclusion otherwise was an unreasonable determination of the facts under §2254(d)(2)); *Snyder v. Louisiana,* 128 S. Ct. 1203, 1207-1208 (2008) (discriminatory intent proven by evidence that prosecution struck all eligible blacks, that the prosecution's asserted race-neutral reasons were contracted by the record, and that they failed to strike similarly situated whites).

the State did not challenge the *Swain* data and statistical analysis itself. Rather, it wrongly argued that statistical evidence derived from other cases was irrelevant to the question of discrimination in Mr. Hoffman's case; that *Miller-El* which Petitioner had cited to the court was distinguishable on the facts and legally irrelevant; and that the Louisiana Supreme Court's finding crediting the state's race-neutral reasons should be adopted. State's Answer, at 7-8. A hearing was required under state law to resolve the disputed question of discrimination. *Tassin v. Whitley*, 602 So.2d 721 (La. 1992). Yet, the state court summarily denied the claims on the merits. That decision does not withstand §2254(d) scrutiny based on the state court record.

34. The Louisiana Supreme Court's decision crediting the prosecution's race-neutral reasons could not reasonably be relied upon because it was itself an unreasonable application of the law and an unreasonable determination of the facts under §2254(d)(1)-(2); it was based on fact findings which were clearly and convincing rebutted on the record, it took irrelevant factors into account, and disregarded relevant evidence of discrimination. Habeas Petition, at 224-232. The Supreme Court also did not have before it the post-conviction allegations as to the historical policy of discrimination, which cast the race-neutral reasons credited by the Supreme Court in a new light. Decades of jurisprudence establishes that such evidence *is* proof of purposeful discrimination.[11] *Miller-El* does not limit *Batson* to cases identical to *Miller-El*'s, but emphasizes the broad range of factors a court should consider. In light of *that* mandate, Petitioner has demonstrated purposeful discrimination.

---

[11] *Hernandez v. Texas*, 347 U.S. 475, 482 (1954) (systematic exclusive over a period of time "bespeaks discrimination, whether or not it was a conscious decision on the part of any individual"); *Swain v. Alabama,* 380 U.S. 202 (1965) (recognizing statistical and historical practice evidence is relevant); *Batson v. Kentucky,* 476 U.S. 79, 93 (1986) (same); *Miller-El I,* at 1036 (same); *Miller El II*, at 240 (same).

35. The state court's ruling denying relief was patently unreasonable. It simply had no facts or law upon which it could base its conclusion. The state court's denial of relief involved an "unreasonable determination of the facts" in part because the court failed to give Mr. Hoffman a hearing on his claims. Having found that Petitioner presented a claim which if established as alleged entitled him to relief, it was inherently unreasonable to deny him relief without giving him the opportunity to prove the facts at a hearing to which he was entitled under state law. Petitioner diligently sought to prove his claims in state court, and through no fault of his own, was precluded from doing so. Both because the state court denied him an evidentiary hearing, and because it failed to reach the ultimate question of whether he could in fact prove his claims, he is entitled to a mandatory hearing under *Townsend*. Petitioner is entitled to outright relief, or in the alternative, an evidentiary hearing at which he will prove all facts alleged in state court with the evidence alleged in state court. *Batson;* §2254(d); *Pinholster;* 2254(e)(2); *Townsend.*

**Claim VII - After Petitioner pled unrebutted facts supporting a prima facie case of grand jury foreperson discrimination and the state court found the claim meritorious, it was an unreasonable application of clearly established federal law and unreasonable a determination of the facts for the state court to deny the claim under§2254(d); the claim merits a hearing in this Court under *Pinholster*.**

36. Petitioner's grand jury foreperson discrimination claim was "adjudicated on the merits" and is therefore subject to review under §2254(d), based upon the state court record. *Pinholster*.

37. In state court proceedings, Petitioner pled a prima facie case of discrimination in the selection of grand jury forepersons meeting the required standards clearly established by the United States Supreme Court.[12]   The state court's decision to deny relief was contrary to, and an unreasonable application of, clearly established federal law and involved an unreasonable determination of the facts. §2254(d)(1)-(2*)*.

---

[12] *See Castaneda v. Partida,* 430 U.S. 482 (1977); *Alexander v. Louisiana*, 405 U.S. 625 (1972); *Cassell v. Texas*, 339 U.S. 282 (1950); *Rose v. Mitchell,* 443 U.S. at 545, 556 (1979).

38. In state court, Petitioner presented data and statistical evidence showing the substantial underrepresentation of blacks over a significant period of time (1 black out of 51 forepersons selected in 26 years (1.96%), from a jury eligible population that was 8.7% black, resulting in a 77.5% comparative disparity, and a 6.75% absolute disparity),[13] together with evidence that the only black foreperson selected to serve was chose*n because* she was black.[14]    The state court ordered the State to respond, therefore finding, as it should have, that he presented a claim, which if established as alleged, entitled him to relief. La. C.Cr.P. art. 927.   The State did not dispute Petitioner's data, which it characterized as "an exhaustive study," or that race had governed the choice of the one black foreperson. State's Answer, at 3.  It merely relied on the erroneous legal argument that a threshold 10% absolute disparity is always required, and that grand jury foreperson discrimination claims were impossible in St. Tammany Parish with a less-than-10% black jury eligible population.  State's Answer, at. 3; Transcript of December 1, 2004 hearing, at 22.

39. The Supreme Court does *not* require an absolute disparity of less than 10%; it has found prima facie cases proven in cases with less than 10% absolute disparities, and any requirement of adherence to this non-existent standard is contrary to and an unreasonable application of clearly established federal law.[15]  That law requires remedy for the unconstitutional exclusion of minority citizens for *all* defendants, not just those tried in venues with greater-than-10% minority

---

[13] Supplemental Petition, Claim I; Supplemental Petition, Ex. 101

[14] Supplemental Petition, Claim I; Supplemental Petition, Ex. 104.  John Fahey, "Black Woman Jury Foreman First for Parish," *Times-Picayune*, METRO, pg1, (Dec. 8, 1988) ("In this case, you might say, I took affirmative action…I was looking for a black woman.") (quoting Judge Stephen Druczer, who selected the black foreperson).

[15] *Alexander v. Louisiana*, 405 U.S. 625, 630 (1972) ("This Court has never announced mathematical standards for the demonstration of "systematic" exclusion of blacks but has, rather, emphasized that a factual inquiry is necessary in each case that takes into account all possible explanatory factors.") (prima facie case found in case with absolute disparity of 9%); *Cassell v. Texas*, 339 U.S. 282 (1950) (prima facie case found in case with absolute disparity of less than 8.8%).

populations. §2254(d)(1).[16]    Comparative disparity analysis is an appropriate measure of substantial underrepresentation in areas with less than 10% minority populations.[17]

40. Given that Petitioner pled *unrebutted* evidence, supporting factual allegations that were sufficient under clearly established Supreme Court law to show a prima facie case of purposeful discrimination, it was an unreasonable application of law and determination of facts to deny relief when the facts pled by Petitioner were undisputed.[18]    §2254(d)(1)-(2).

41. Petitioner has demonstrated the unreasonableness of the state court decision under §2254(d) based on the record, as *Pinholster* requires and the evidentiary hearing ordered by this Court should proceed.  The question of whether Petitioner can in fact prove a prima facie case remains for this Court to decide, after a hearing.  Petitioner diligently requested a hearing in state court, §2254(e)(2), but the court denied it.  He is entitled to a hearing under the mandatory grounds of *Townsend,* and this Court's order for such a hearing should stand.  *See, e.g., Guice v. Fortenberry*, 661 F.2d 496 (5th Cir. 1981) (federal evidentiary hearing required under *Townsend*,

---

[16] *Rose v. Mitchell*, 443 U.S. 545, 565 (1979) (affirming long established jurisprudence requiring reversal of conviction when grand jury discrimination shown); *Castaneda v. Partida,* 430 U.S. 482 (1977) (same); *Hill v. Texas*, 316 U.S. 400, 406 (1942) ("Equal protection of the laws is something more than an abstract right. It is a command which the State must respect, the benefits of which every person may demand.  Not the least merit of our constitutional system is that its safeguards extend to all") (explaining why automatic reversal required when discriminatory selection taints grand jury proceedings).

[17] *Mosley v. Dretke*, 370 U.S. 467, 479 n.5 (5th Cir. 2004) , *cert. denied* 543 U.S. 1154 (2005) ("…if the distinctive group at issue makes up less than 10% of the population, comparative disparity may be used."); *U.S. v. Butler*, 615 F.2d 685, 686 (5th Cir. 1980) (when a "less-than-10% minority" is at issue absolute disparity "not the sole means" of establishing significant under-representation); *Foster v. Sparks*, 506 F.2d 805, 835 (5th Cir. 1975) ("an intractable use of the absolute measure may… produce distorted results. For example, if a district with 10% non-white population has.5% non-whites in the wheel, the 9.5% disparity may not evoke disapproval under an absolute measure but may require it under a comparative measure. Hence, flexible use of the two measures is advisable, with the selection of either to be guided by both a desire to avoid distorted results and a need to adequately protect the interests of those challenging the selection system. "); *United States v. Chanthadara*, 230 F.3d 1237, 1256-57 (10th Cir. 2000) (considering comparative disparity because minority population so low); *Jefferson v. Terry*, 490 F.Supp.2d 1261, 1283-86 (N.D. Ga. 2007) (comparative disparity statistics "more important" where minority population is less than 10%).

[18] *Alexander v. Louisiana*, 405 U.S. 625, 630 (U.S. 1972) (prima facie case proven by combination of statistical showing of less than 10% absolute disparity and evidence that jurors actually selected by discriminatory criteria); *Cassell v. Texas*, 339 U.S. 282 (1950) (same).

where Petitioner alleged facts which if proven would demonstrate a prima facie case of discrimination, hearing in state court was inadequate, and factual issues remained unresolved).

**Claim IX - The state court's denial of Petitioner's claim of racial bias and purposeful discrimination by the jury that convicted him, after finding Petitioner pled a meritorious claim, was unreasonable under §2254(d); the claim merits a hearing in this Court under *Pinholster.***

42. Petitioner's claim of a racially biased jury was "adjudicated on the merits" and is therefore subject to review under §2254(d), based upon the state court record. *Pinholster*.

43. In state court, Petitioner alleged facts, supported by the signed statement of a juror, which clearly demonstrated the racial bias of at least one member of his jury. The state court's denial of relief, without a hearing to allow him to prove bias and prejudice, and to determine whether the state could rebut the presumption of purposeful discrimination the evidence established, constituted an unreasonable application of clearly established federal law, and an unreasonable determination of the facts under § 2254(d)(1)-(2). As *Pinholster* requires, Petitioner meets §2254(d) based on the state court record alone. *Id*. at 131 S. Ct. at 1398, and Petitioner is entitled to present his evidence to prove his claims.

44. In state post-conviction proceedings, Petitioner alleged violations of multiple constitutional guarantees resulting from the race-based animus held against him by at least one member of his jury. Supplemental Petition, Claim III. In support, he pled evidence that a juror was actually biased against him because of his race, and therefore presumed his guilt, distrusted his defense, believing that he "play[ed] the race card" "like O.J. Simpson" "to get off",[19] and relied on racial stereotypes about drug and gang involvement, in returning a sentence of death,

---

[19] For example, Mari Lower's race-based determination led her to incorrectly perceive that the defense intentionally removed all the black people from the jury so they could use it to get him off later (when in fact the *State* were responsible for removing all blacks from the jury), that Mr. Hoffman relied on his race as an excuse to avoid the death penalty (when the defense didn't rely on race at all in their mitigation case). She then held these inaccurate assumptions against him, in determining his fate.

despite uncontradicted evidence to the contrary at trial.[20]  Supplemental Petition Exs. 106, 109.
Petitioner requested a hearing to establish his allegations.

45. Finding that Petitioner presented claims which if established as alleged, entitled him to
relief, La. C.Cr.P. art. 927, the state court ordered a response.  In its Answer, contrary to clearly
established federal law, the State asserted that Petitioner had presented insufficient evidence to
meet the prima facie showing required to warrant hearing. In so doing, the State argued that
Petitioner's evidence was inadmissible under juror shield law, made vague allusions to the
impropriety of the evidence and denied the evidence of racial prejudice inherent in the juror's
statement, but presented no substantive evidence to rebut either the validity of the statement or
the claim.  State's Answer, at 8-9.  The state court summary denied the claim without a hearing.

46. However, Ms. Lower's words clearly demonstrated her racial bias, or at least raised a
prima facie case of discrimination and bias, triggering an obligation on the court to make further
enquiry.  Her explicit references to Mr. Hoffman's race, the comparison to O.J. Simpson's trial,
and her perceived use of "the race card" "to get [him] off" are classic manifestations of racial
bias.[21]

---

[20] It was undisputed at trial that Mr. Hoffman had no prior criminal record, and had never been involved with drugs
or gangs at all.

[21] *United States v. Lentz*, 58 Fed. Appx. 961 (4th Cir. 2003) (finding that the statements alluding to O.J. Simpson
trial about killing victim and evading punishment were prejudicial, noting evidence that such O.J. statements had
become slang to describe getting away with murder and that the O.J. Simpson case excited public emotion and could
have excited the emotions of the jury, and holding that district court did not abuse its discretion in excluding such
statements made by defendant to the victim); *United States v. Jones*, 1998 U.S. App. LEXIS 224 (10th Cir. 1998)
(finding that prosecutor's reference to the O.J. Simpson case in closing argument was a "gratuitous and
inappropriate attempt to impugn the credibility of Mr. Jones' counsel and challenge the legitimacy of his defense"
though finding comments harmless on the facts); *State v. Snyder,* 1998-1078 (La. 9/06/06) 942 So.2d 484, (Kimball,
J., dissenting from denial of *Batson* claim) (observing that "the State injected race into the proceedings directly"
when it mentioned the O.J. Simpson case during the penalty phase and that the prosecution's reference to O.J.
Simpson getting away with murder was motivated by "a racially discriminatory purpose of inflaming the jury"); *Id,*
at 504-505 (Johnson, J., dissenting) ("there is much evidence that the majority of white Americans believed O. J.
Simpson was guilty of murdering his wife and that he "got away with it,"  opining that the prosecution's improper
and clearly inflammatory comments about O.J. Simpson created a substantial risk that the death penalty would be

47. The signed juror statement *was* adequate to support a showing of misconduct requiring further inquiry by the court, especially given that the State alleged no facts in support of its vague assertions it is unreliability.[22]

48. It is clearly established that the juror shield law does not apply to exclude evidence of mental biases, like race, which are unrelated to the issues to be determined at trial.[23] And it is clearly established that race is absolutely prohibited from consideration by juries, particularly in capital trials.[24] In any event, the juror shield laws are irrelevant to Equal Protection and Sixth Amendment actual racial bias claims, because both are structural errors, requiring relief without any showing of actual prejudice during deliberations, and the proper inquiry does not take the court behind the juror shield at all.[25]

49. Having correctly found that Petitioner had pled a meritorious claim for relief, it was an unreasonable application of the law and determination of the facts, to deny him relief without providing him the opportunity at a hearing to demonstrate Ms. Lower's actual racial bias,[26] to

---

imposed, such that the death sentence should be reversed); *rev'd, Snyder v. Louisiana,* 128 S. Ct. 1203 (2008) (granting relief on *Batson* claim).

[22] *See, e.g., Wellons v. Hall*, 130 S. Ct. 727, 731 (2010) (GVR under *Cone v. Bell*, ordered for further consideration of juror misconduct claims predicated on attorney's proffer of proof about information obtained during jury interviews).

[23] *Rushen v. Spain*, 464 U.S. 114, 121 n.5 (1983) ("A juror may testify concerning any mental bias in matters unrelated to the specific issues that the juror was called upon to decide").

[24] *McCleskey v. Kemp,* 481 U.S. 279, 335 (1987) (Brennan, J., dissenting); *Zant v. Stephens,* 462 U.S. 862, 885 (1983); *Turner v. Murray*, 476 U.S. 28, 35 (1986).

[25] *Vasquez v. Hillery,* 474 U.S. 254, 263 (1986) ) ("When constitutional error calls into question the objectivity of those charged with bringing a defendant to judgment, a reviewing court can neither indulge a presumption of regularity nor evaluate the resulting harm"); *Tumey v. Ohio,* 273 U.S. 510, 535 (1927); *McCleskey v. Kemp,* 481 U.S. 279 (1987).

[26] *Smith v. Phillips*, 455 U.S. 209, 215 (1982) ("This court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias") (citing *Dennis v. United States*, 339 U.S. 162, 171-172 (1950) ("Preservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury…). *See Panetti v. Quarterman,* 551 U.S. 930, 948 (2007) (state court's failure

demonstrate the prejudice resulting from the improper extraneous influence of race,[27] and without requiring the State to affirmatively rebut the clear inference of purposeful discrimination Petitioner's evidence would reveal.[28] §2254(d); *Pinholster*. This Court properly ordered an evidentiary hearing on the issue. §2254(e)(2); *Townsend*.

> **Claim XI -- *Pinholster* does not preclude a hearing on the jury's exposure to extraneous information provided by police and the prosecution during the crime scene visit, at a time when Mr. Hoffman was not present to confront or rebut the information.**

50. *Pinholster* does not preclude an evidentiary hearing in this Court on Petitioner's claim that the police and prosecution provided extra-record information to jurors when they visited the crime scene. Because the state court record demonstrates a serious instance of an extraneous influence on jurors, and the court failed to conduct a hearing on the matter, the state court simply could not have reasonably denied the claims of misconduct. Just as dictated by *Pinholster*, a review under § 2254(d)(1) "limited to the record that was before the state court that adjudicated the claim on the merits" establishes that the state court unreasonably denied relief on the juror misconduct claims. *Id.* at 131 S. Ct. at 1398; *see also See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007) "(the factfinding procedures … were 'not adequate for reaching reasonably correct results' or, at a minimum, resulted in a process that appeared to be 'seriously inadequate for the

---

to provide hearing and other procedures mandated by *Ford v. Wainwright,* in adjudicating claim that the defendant was incompetent to be executed constituted an unreasonable application of clearly established United States Supreme Court law under §2254(d)(1)).

[27] *United States v. Olano*, 507 U.S. 725, 739 (1993) (court must inquire into whether "the intrusion affect[ed] the jury's deliberations and thereby its verdict"); *Smith v. Phillips*, 455 U.S. 209 (1982).

[28] *See, e.g., Alexander v. Louisiana*, 405 U.S. 625, 631-632 (1972) ("Once a prima facie case of invidious discrimination is established, the burden of proof shifts to the State to rebut the presumption of unconstitutional action"); *Batson v. Kentucky*, 476 U.S. 79, 97 (1986) ("Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation").

ascertainment of the truth') (internal citations omitted).  This Court's grant of a hearing on January 27, 2011 is unaffected by Pinholster; the evidentiary hearing should proceed as ordered.

51. The crux of Habeas Petition Claim XI is that the police and prosecution elaborated on "evidence" at the crime scene outside both Mr. Hoffman's and counsel's presence, thereby allowing the jury to consider extrinsic evidence at a time when Mr. Hoffman was not present to confront it.  Habeas Petition at 279-292.

52. Mr. Hoffman specifically pled in state court, in Claim VII of the Supplemental Petition, that interviews with jurors and trial counsel established that either the police or the prosecution pointed out "evidence" on the dock, allowed jurors to ask questions about the crime scene at the dock, and answered jurors' questions.  Supplemental Petition at 150-162.  This all happened outside the hearing of Mr. Hoffman *and* his attorneys.  Mr. Hoffman attached statements attesting to the recollections of *four* jurors and *both* defense counsel all supporting the facts he pled.  Supplemental Petition, Exs. 4-5, 106-109.

53. In state post-conviction proceedings, the trial court ordered the State to respond to Mr. Hoffman's claim, thereby finding that Mr. Hoffman had pled a claim, factually and legally, that entitled him to relief.  The state court's decision is entitled to deference.

54. The State's Answer to what the court correctly found to be a meritorious claim, merely consisted of unsupported denials and dodges of the facts pled and the law cited in support of the claim.  It did not produce a shred of evidence rebutting juror and defense attorney statement.  It merely attacked the statements as "unverified" without any suggestion even that the statements were forged or incorrect.  State's Answer at 17-18.

55. The deprivation of Petitioner's fundamental right to be present and to confront the evidence against him at the crime scene, where critical prosecution evidence was presented to the

jury in support of their capital charge against him, mandates reversal of his conviction. *See Pointer v. Texas*, 380 U.S. 400, 404 (1965) ("There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal"). *See also* Habeas Petition at 282-284.

56. The Sixth Amendment guarantee of an impartial jury requires that a jury verdict be free from extraneous influences or information. The verdict must be based on evidence presented during trial proceedings which accord with all the basic requirements of due process. *Turner v. Louisiana,* 379 U.S. 466, 473 (1965). When a jury considers extraneous evidence, prejudice is presumed and the burden is on the State to demonstrate that the misconduct was not prejudicial. *Remmer v. United States*, 347 U.S. 227, 229 (1954) (stating that "'private communication, contact, or tampering'" with the jury is presumptively prejudicial"). Once the Petitioner presents a "colorable claim" that the jury has been exposed to extrajudicial evidence, prejudice is presumed and the burden shifts to the State to prove no reasonable possibility that the communication influenced the jury. *Id.*[29] Indeed, as many courts have found, once a colorable claim of extraneous evidence is made, a court must conduct a full inquiry into what occurred in order to explore its effect on the jury.[30] The state court utterly failed to do so, despite

---

[29] While the Fifth Circuit has somewhat modified the rule of *Remmer*, it has persisted in holding that where there is a serious instance of an extraneous influence on the jury, at a minimum, "the trial court must first assess the severity of the suspected intrusion." *United States v. Sylvester*, 143 F.3d 923, 934 (5th Cir. 1998) (counsel for both sides must have an opportunity to examine jurors).

[30] Contrary to the State's protestations, neither La. C.E. art. 606(b) nor Fed. Rule Ev. 606(b) shield jurors from testifying to the full extent of information provided by police and/or the prosecutor at the crime scene. Jury shield laws do not prohibit juror testimony as to " whether extraneous prejudicial information was improperly brought to the jury's attention" or "whether any outside influence was improperly brought to bear upon any juror." *Id. See also*

Petitioner's request for an evidentiary hearing. It's denial of relief, without inquiry into the full extent of extraneous evidence jurors heard, was unreasonable, and an evidentiary hearing should proceed as ordered by the Court.

> **Claim XII -- Once Petitioner pled juror misconduct and prejudice in state court, supported by juror statements and found by the state court to constitute a meritorious claim, and the State made no effort to contest prejudice, denial on the merits without an evidentiary hearing constituted an unreasonable application of clearly established federal law and an unreasonable determination of the facts; the claims merit a hearing in this Court under *Pinholster*.**

57. *Pinholster* does not preclude an evidentiary hearing in this Court on Petitioner's claims of juror misconduct. Because the state court record demonstrates that likely prejudice was established, and the court failed to conduct a hearing on the matter, the state court simply could not have reasonably denied the claims of misconduct. Under *Pinholster*, a review under §2254(d)(1) "limited to the record that was before the state court that adjudicated the claim on the merits" establishes that the state court unreasonably denied relief on the juror misconduct claims. *Id*. at 131 S. Ct. at 1398. The evidentiary hearing should proceed as ordered.

58. In state post-conviction proceedings, Petitioner alleged several instances of juror misconduct which undermined the constitutionality of his conviction of first degree murder and sentence of death: that jurors engaged in premature deliberations, that they considered extraneous evidence of gang involvement, and that they engaged in unauthorized discussions of parole. Supplemental Petition at 173-183 (Claim XI). He reasserted the same claims, based on the same evidence presented to the state court, in his Habeas Petition. Habeas Petition at 292-305 (Claim XII). Petitioner supported the claims raised in state post-conviction with statements from jurors. Supplemental Petition, Exs. 106-109. Finding that Petitioner pled a legal and

---

*Mattox v. United States*, 146 U.S. 140 (1892) (jurors may testify to prejudicial extraneous information or influences injected into or brought to bear upon the deliberative process).

factual basis for claims that merited relief, the district court ordered the state to respond to the rampant juror misconduct.  In its Answer, the State did not contest any of Petitioner's factual allegations.  State's Answer at 19-20.  Rather, it wrongly claimed that the facts alleged did not constitute misconduct and wrongly claimed that the juror statements were "inadmissible."  *Id*.[31] After argument as to whether to order an evidentiary hearing on the issues, the state court denied a hearing, State Court Order, 5/2/05, and ultimately denied the claims on the merits.  State Court Order, 5/1/07.

59. It was unreasonable, based on the record before it, for the state court to fail to conduct an evidentiary hearing inquiring into the circumstances of the juror misconduct—in these instances either the impact on the jury of extraneous factors of speculation as to gang involvement and parole, or the impact of premature deliberations.  Mr. Hoffman was entitled *at a minimum* to an evidentiary hearing to explore both the misconduct and its impact on jurors.[32]  *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007) (§2254(d) does not bar federal court consideration of habeas claim where hearing was required but not held by state court: "the factfinding procedures upon which the court relied were 'not adequate for reaching reasonably correct results' or, at a

---

[31] Neither La. C.E. art. 606(b) nor Fed. Rule Ev. 606(b) shield jurors from testifying to the full extent of information provided by police and/or the prosecutor at the crime scene.  Jury shield laws do not prohibit juror testimony as to "whether extraneous prejudicial information was improperly brought to the jury's attention" or "whether any outside influence was improperly brought to bear upon any juror." *Id*.  *See also Mattox v. United States*, 146 U.S. 140 (1892) (jurors may testify to prejudicial extraneous information or influences injected into or brought to bear upon the deliberative process).

[32] *Smith v. Phillips*, 455 U.S. 209, 215 (1982) ("the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias"); *United States v. Olano*, 507 U.S. 725, 739 (1993) (court must inquire into whether "the intrusion affect[ed] the jury's deliberations and thereby its verdict"); *Drew v. Collins*, 964 F.2d 411, 415-16 (5th Cir. 1992) (parole discussions by capital jurors in sentencing constitutes misconduct which requires a full hearing where there is evidence of prejudice to the defendant); *United States v. Sylvester*, 143 F.3d 923, 934-935 (5th Cir. 1998) (remanding to district court to conduct a hearing on prejudice).  *Based on the state record alone*, the state court's denial of the claims, without any inquiry into the prejudice resulting from juror misconduct, constituted an unreasonable application of clearly established federal law as well as a resulting unreasonable determination of the facts.

minimum, resulted in a process that appeared to be 'seriously inadequate for the ascertainment of the truth') (internal citations omitted)).  The hearing ordered by this Court should proceed.

**V.     PETITIONER IS ENTITLED TO RELIEF ON CLAIMS IV, V, VIII, X, XIII, XV, XVI, XVII, AND XVIII BASED ON THE STATE COURT RECORD ALONE, NO FURTHER EVIDENCE IS REQUIRED, HE DOES NOT SEEK A HEARING AND *PINHOLSTER* DOES NOT AFFECT THEIR ADJUDICTION**

60. Petitioner's remaining claims, IV (prosecutorial misconduct), V (penalty phase B*rady* violation), VIII (*Turner vs. Murray* violation and trial counsel's ineffective efforts to voir dire perspective jurors on racial bias), X (race-based selection of venue), XIII (change of venue) XV (the court's inadequate and *ex parte* response to jury question on defendant's juvenile record) XVI (Witherspoon violation), XVII (unconstitutionality of the short form indictment), XVIII (cumulative error), were fully developed in the state court record.  Petitioner has not raised any new allegations in federal court.   As argued fully in the Habeas Petition, he has demonstrated the unreasonableness of the state court's decisions, §2254(d), and his entitlement to relief based on the facts established and law pled, in the state court record alone.  *Pinholster* has no impact, and relief is warranted without a hearing.

WHEREFORE, Petitioner respectfully requests that this Court deny the State's *Motion to Limit Evidentiary Hearing*.

Respectfully submitted,

/s Caroline Tillman
Sarah Ottinger, La. Bar No. 24589
Caroline Tillman, La. Bar No. 31411
Capital Appeals Project
636 Baronne Street
New Orleans, LA 70113
(504) 529-5955

**VI.**     CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Motion has been served via electronic notification from the clerk of court for delivery upon Respondent through Assistant District Attorney, Kathryn Landry, P.O. Box 82659, Baton Rouge, LA on this 17th day of May, 2011.

<u>/s Caroline Tillman</u>
Caroline Tillman