IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

JESSIE HOFFMAN, #400473,
    Petitioner

NO. 09-3041

v.

SECTION "B"

DARRYL VANNOY,
    Louisiana State Penitentiary,
    Angola, Louisiana,       **EXECUTION SCHEDULED
    Respondent               MARCH 18, 2025**

## MEMORANDUM IN SUPPORT
## OF MOTION FOR STAY OF EXECUTION

NOW INTO COURT, through undersigned counsel, comes petitioner JESSIE HOFFMAN, who has moved this Court for an Order staying the warrant for execution issued by the 22nd Judicial District Court on February 12, 2025, ordering that Mr. Hoffman, whose habeas proceeding is pending before this Court as the result of the filing of a motion for relief pursuant to Federal Civil rule 60(b)(6), be put to death on March 18, 2025, between 6:00 p.m. and 9:00 p.m. In support of the motion to stay his execution, petitioner respectfully submits the following memorandum.

**I. The Critical Factual Context**

    **A. State Court Post-Conviction Proceedings**

Mr. Hoffman sought post-conviction relief in state court pursuant to La.C.Crim.P. art. 924, *et seq.* During his investigation, he obtained a signed declaration, subsequently endorsed under oath, from one of the jurors who had voted to sentence him to death. Juror Lower's declaration stated in pertinent part:

- I watched him during the trial. . . . Looking at him you could tell that he did this cold-blooded crime."

1

- "There were no black people on the jury. The defense made sure that there weren't any. From the start of trial I thought that was deliberate by the defense so they could play the face card and get him off later. I've heard about people getting off on technicalities like that before The jurors speculated about this during the trial.

- "We also thought it was a defense strategy to use his race and background in other ways. They obviously tried to use it as an excuse to try to make us feel sorry for him being a poor black man from the projects so he did not get the death penalty. Like O.J. Simpson using it to get of. This tactic did not surprise me. I've seen that attitude before with people using their background to justify whatever they can.

- "During the penalty phase deliberations we wanted to know whether the defendant had a juvenile record. We thought that given his background he may have a history of drugs and things like that. We wondered if he was in a gang. The judge told us we were not allowed to have that information."

Exh. A.

Mr. Hoffman presented Ms. Lower's declaration as *prima facie* evidence that his conviction and death sentence were tainted by the racial biases of one or more jurors. He alleged in his state habeas petition that he was denied his rights to a fair trial and reliable sentence under the Sixth, Eighth, and Fourteenth Amendments because one or more of his jurors based their decisions on the impermissible basis of race. He requested a hearing to present evidence proving his claim. The State, in turn, argued that Louisiana's jury-shield law, La.C.E. 606(B), barred the court from considering the evidence. *See Hoffman*, 326 So. 3d at 237 n.2. The state district court denied a hearing on the issue and summarily denied the claim without issuing reasons. *Id.* The Louisiana Supreme Court summarily denied Mr. Hoffman's application for a writ of review and the Supreme Court denied certiorari.

### B.  Federal Court Habeas Proceedings

This Court granted Mr. Hoffman a certificate of appealability on *inter alia* the racist-juror claim and this Court's denial of an evidentiary hearing to prove it. Although Mr. Hoffman briefed

both claims, the Fifth Circuit failed to consider the propriety of this Court's denial of an evidentiary hearing. The Fifth Circuit held that the state habeas court's summary denial of relief was not unreasonable and affirmed this Court's denial of the claim. *Hoffman v. Cain*, 752 F.3d 430, 450-51 (5th Cir. 2014).

### C. State Court Successive Post-Conviction Proceedings

In February 2019, Mr. Hoffman returned to state court, filing a second post-conviction petition in the state district court, raising several claims and requesting an evidentiary hearing to prove them. His first claim alleged that the Supreme Court's *Pena-Rodriguez* decision "makes plain that Mr. Hoffman's Sixth, Eighth, and Fourteenth Amendment rights were violated with the jury relied upon racially invidious stereotypes in arriving at its guilt and death verdicts."

The state district court denied the petition without first conducting a hearing. With respect to the claim that the racial bias of one or more jurors invalidated the conviction and/or death sentence, the court ruled that the issue had been thoroughly reviewed and denied in initial post-conviction proceedings. The Louisiana Supreme Court disagreed. The court noted that, when Mr. Hoffman first raised the claim, the state and federal "courts dismissed [it] by relying on no-impeachment rules." *Id.* at 237. It further observed that the Supreme Court's decisions in *Pena-Rodriguez* and *Buck* "render Hoffman's juror bias claim 'new or different' from the one he raised in the previous application." *Hoffman*, 326 So. 3d at 237. As the court observed, "[t]he no-impeachment rule rendered the previous claim virtually impossible to prove" but, under *Pena-Rodriguez*, "the issue now is whether the evidence supports removing the no-impeachment bar," rendering the claim "'new or different' for purposes of La.C.Cr.P. art. 930.4." *Id.* at 238. The district court, accordingly, "erred when it found the claim was previously litigated." *Id.*

The Louisiana Supreme Court nonetheless determined that the *Pena-Rodriguez* claim lacked merit and "warrant[ed] no further attention." *Id.* at 238.[1] It found that "the juror statements suggest they held beliefs that may have rested on racial stereotypes," but concluded the juror statements "were not nearly as 'egregious and unmistakable' as those presented in *Pena-Rodriguez*" and did "not amount to 'a clear statement that indicates [a juror] relied on racial stereotypes or animus to convict'" or "prove that "'racial animus was a significant motivating factor in the juror's vote' for the death sentence." *Id.* at 298 (quoting *Pena-Rodriguez*, 580 U.S. at 225-26).

The Louisiana Supreme Court's determinations that the *degree* of juror racism was not sufficiently "egregious" or that Ms. Lower's declaration did not amount to a "clear statement" of racial animus were unreasonable as a matter of fact and law. Indeed, as the *Buck* decision makes unmistakably clear, "[s]ome toxins can be deadly in small doses." *Buck*, 580 U.S. at 233 (addressing the harm of a defense expert's brief testimony that the defendant's race would likely contribute to his future dangerousness).

### D. Recent Supreme Court Developments

As set forth more fully in Mr. Hoffman's motion to reopen his habeas proceedings pursuant to Federal Rule of Civil Procedure 60(b)(6), the motion is triggered by the extraordinary circumstances of the intervening Supreme Court decisions in *Smith v. Arizona*, 602 U.S. 779 (2024), and *Andrew v. White*, 145 S.Ct. 75 (2025), which together support Mr. Hoffman's request for relief at this time pursuant to *Pena-Rodriguez v. Colorado*, 580 U.S. 206 (2017), and *Buck v.*

---

[1] The Louisiana Supreme Court chose not to address whether *Pena-Rodriguez* applied retroactively, noting that, while three federal circuit courts had found that the decision did not apply to cases on collateral review, "[n]one of these decisions bind this Court." *Id.* at 238 and 238 n.4.

4

*Davis*, 580 U.S. 100 (2017), decisions unreasonably applied by the Louisiana Supreme Court's decision in *State v. Hoffman*, 2020-00137 (La. 10/19/21), 326 So. 3d 232, 238 (La. 2021). Together, these decisions demonstrate a "defect in the integrity of the federal habeas proceeding"—this Court's previous order denying Mr. Hoffman an evidentiary hearing on his claim that one or more jurors voted to impose his death sentence on the basis of racial bias—and provide compelling grounds for this Court to reopen Mr. Hoffman's habeas proceedings to allow him to prove this claim. *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005).

## II. Legal Authorities Relevant To Stays Of Execution

### A. The Power To Grant A Stay

When a petition for writ for habeas corpus is pending in federal court, the federal judge before whom the petition is pending has the power to issue a stay of execution. 28 U.S.C. § 2251. The habeas corpus proceeding is deemed pending until the court is divested of jurisdiction. *See Teague v. Johnson*, 151 F.3d 291 (5th Cir. 1998) ("once the appellate mandate issues, a habeas petition is no longer pending before the court of appeals, and we have no jurisdiction to stay proceedings under § 2251"); *Howard v. Dretke*, 157 Fed.Appx. 667, 670-72 (5th Cir. 2005) (unpublished) (holding both the district court and appellate court lacked jurisdiction to grant stay of execution in conjunction with motion for appointment of counsel that was not tied to pending or proposed habeas proceeding in the district court).

### B. The Standard For Granting A Stay

The Supreme Court distinguishes a stay requested in an initial habeas proceeding from one made in a second or successive habeas proceeding. The significant difference between an initial habeas proceeding and a successive proceeding is an overriding theme throughout the legal landscape. *See Lonchar v. Thomas*, 517 U.S. 314, 324, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996)

("Dismissal of a first habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty.").

Although a stay in an initial habeas proceeding is not automatic, the underpinning of legal precedent is that courts should err on the side of caution and grant a stay of execution in an initial habeas proceeding when significant legal issues are present. In *Barefoot v. Estelle*, 463 U.S. 880, 895, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)*,* the Supreme Court noted the importance of granting a stay of execution in an initial habeas proceeding at the appellate level when a Certificate of Appealability has issued "to prevent the case from becoming moot by the petitioner's execution." *Id.*, at 893-894, 103 S.Ct., at 3395. On the other hand, a "[s]econd and successive federal habeas corpus petitions present a different issue," because in those cases it is more likely that "a condemned inmate might attempt to use repeated petitions and appeals as a mere delaying tactic." *Barefoot v. Estelle*, supra, at 895, 103 S.Ct. at 3395. "A stay of execution pending disposition of a second or successive federal habeas petition should be granted only when there are 'substantial grounds upon which relief might be granted.'" *Delo v. Stokes*, 495 U.S. 320, 321, 110 S.Ct. 1880, 1881, 109 L.Ed.2d 325 (1990).

In *Barefoot v. Estelle*, the Supreme Court held: "[t]he granting of a stay should reflect the presence of substantial grounds upon which relief might be granted." In moving for a stay of execution, the movant in a capital case "'need not always show a probability of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay.'" *White v. Collins*, 959 F.2d 1319, 1322 (5th Cir. 1992) (alteration omitted, but discussed below), *quoting Celestine v. Butler*, 823 F.2d 74, 77 (5th Cir. 1987), *quoting O'Bryan v. McKaskle*, 729 F.2d 991,

993 (5th Cir.1987), *cert. denied*, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984)), cert. denied, 483 U.S. 1036, 108 S.Ct. 6, 97 L.Ed.2d 796 (1987). The "balance of equities" involves considering ".... (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of a stay would serve the public interest." *White v. Collins*, 959 F.2d at 1322 (noting that the balance of equities are the "other" factors aside from the merits of the claims factor).

Mr. Hoffman satisfies the criteria warranting a stay of execution pending resolution of his federal habeas proceedings.

### III. This Court Must Grant A Stay Of Execution In This Initial Habeas Proceeding To Allow The Orderly Consideration of Mr. Hoffman's Pending Rule 60(b)(6) Motion On The Merits Involving Serious Legal Questions

This is Mr. Hoffman's initial habeas proceeding. While his petition for writ of habeas corpus was originally denied by this Court, the matter remains pending as a result of the recently filed motion for relief pursuant to Federal Rule of Civil Procedure 60(b)(6) addressing the correctness of the Court's Ruling and Judgment on the writ of habeas corpus. Accordingly, this Court has the power to issue a stay of execution. Additionally, a stay of execution should be entered in this case in order that the serious legal issues raised in the pending motion be finally adjudged by this Court. Otherwise, the case will become moot upon Mr. Hoffman's execution on March 18, 2025.

The fact that Mr. Hoffman is on the brink of execution without any court ever allowing him to fully develop his race-based juror claim in an evidentiary hearing cannot be understated.

### A. As Set Forth More Fully In Mr. Hoffman's Rule 60(b)(6) Motion and Memorandum, The Judgment Dismissing Mr. Hoffman's Petition Without An Evidentiary Hearing on the Race-Based Juror Issue Is Based On Manifest Error Of Law And Fact That Must Be Corrected.

7

As set forth more fully in Mr. Hoffman's Rule 60(b)(6) motion and memorandum in support, the judgment dismissing Mr. Hoffman's petition without an evidentiary hearing on the race-based juror issue was based on a manifest error of aw and fact that must be corrected. This Court manifestly erred in concluding that the state court's summary dismissal of petitioner's federal constitutional claims are insulated from review by this Court, despite these failures in the state court process, so long as the state court's bottom line, based on the limited record before it, appears "reasonable."

Additionally, this Court committed manifest error in its evaluation and dismissal of Mr. Hoffman's claim without an evidentiary hearing.

### B. The Balance Of Equities Weighs In Favor Of Granting A Stay

It goes without saying that Mr. Hoffman would be irreparably injured if executed before his initial habeas proceeding is completed. "In a capital case, the possibility of irreparable injury weighs heavily in the movant's favor.... In a capital case, we must be particularly certain that the legal issues "have been sufficiently litigated," and the criminal defendant accorded all the protections guaranteed him by the Constitution of the United States." *O'Bryan v. Estelle*, 691 F.2d 706 (5th Cir. 1982) *quoting Shaw v. Martin*, 613 F.2d 487, 491 (4th Cir. 1980).

Although the State has an interest in carrying out its sentence, there would be no substantial harm to the State by granting the stay to allow the judicial process to proceed in an orderly fashion. Moreover, the public interest is served by according all Constitutional protections to a condemned petitioner who has yet to have his initial habeas proceeding completed.

### IV. Conclusion

As set forth above, and as set forth more fully in Mr. Hoffman's motion and memorandum filed pursuant to Rule 60(b)(6), this Court committed manifest errors of law and fact in connection

with its denial of petitioner's petition for a writ of habeas corpus without the benefit of any evidentiary hearing. Mr. Hoffman thus presents a substantial case on the merits involving serious legal questions as required by *Barefoot v. Estelle*. This Court must thus exercise its power and stay the warrant for execution issued by the 22nd Judicial District Court on February 12, 2025, setting Mr. Hoffman's execution for March 18, 2025.

**Respectfully submitted,**

s/ Rebecca L. Hudsmith, La. Bar No. 07052
Rebecca L. Hudsmith
FEDERAL PUBLIC DEFENDER FOR THE MIDDLE AND WESTERN DISTRICTS OF LOUISIANA
102 Versailles Blvd., Suite 816
Lafayette, LA 70501
Phone: 337-262-6336
Facsimile: 337-262-6605
Email: Rebecca_Hudsmith@fd.org

**CERTIFICATE OF SERVICE**

This certifies that I electronically filed the foregoing motion, along with the proposed order, with the Clerk of Court by using the CM/ECF system that will send a notice of electronic filing to all counsel of record on this 17th day of March, 2025.

/s Rebecca L. Hudsmith

9