IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

JESSIE HOFFMAN, #400473,
    Petitioner

v.

DARRYL VANNOY,
    Louisiana State Penitentiary,
    Angola, Louisiana,
    Respondent

NO. 09-3041

SECTION "B"

EXECUTION SCHEDULED
MARCH 18, 2025

**PETITIONER'S REPLY TO RESPONDENT'S OPPOSITION TO MOTION FOR STAY OF EXECUTION AND MOTION TO RE-OPEN HABEAS CORPUS PROCEEDINGS**

NOW INTO COURT, through undersigned counsel, comes petitioner JESSIE HOFFMAN, who hereby files his reply to Respondent's Opposition to Motion for Stay of Execution and Motion to Re-Open Habeas Corpus Proceedings. Doc. 109.

    **I.**    **Mr. Hoffman's 60(b) motion is not a second or successive petition in disguise.**

As Respondent observes, "[a] proper Rule 60(b) motion challenges 'some defect in the integrity of the federal habeas proceedings.'" Doc. 109 at 6 (quoting *Gonzalez v. Crosby*, 545 U.S. 524 532 (2005)). That is precisely what Mr. Hoffman has done. His 60(b) motion challenges the "defect" of this Court's denial of an opportunity to present evidence at a hearing—a hearing he diligently sought but never received in state court due to the state courts' reliance on Louisiana's no-impeachment rule, La.C.Evid. 606(b), and, in a decision echoing that ruling, by this Court, which viewed Fed.R.Evid. as barring factual development of the claim. *See Hoffman v. Cain*, 2012 U.S. Dist. LEXIS 44610 (E.D. La., Mar. 29, 2012). Without a hearing at which to present *evidence*, Mr. Hoffman's claim was "virtually impossible to prove." *State v. Hoffman*, 326 So. 232, 238 (2021). As a result of the 606(b) bar, the state courts never addressed the merits of Mr. Hoffman's

1

claim, *see id.* at 237 and 237 n.2, and neither did this Court, *see Hoffman*, 2012 U.S. Dist. LEXIS 44610.

Mr. Hoffman's 60(b) motion thus attacks a "defect" it the proceedings, which places his allegation of juror bias beyond reach. *See, e.g.*, *Mitchell v. Rees*, 261 Fed. Appx 825, 829 (6th Cir. 2008) ("Mitchell's Rule 60(b) motion argues that Mitchell I erroneously denied him an evidentiary hearing and requests that the district court reopen the case and grant the hearing. This is not a 'claim' because it does not assert an error in the state conviction and would not constitute a federal basis for relief.");[1] *cf. United States v. Marizcales-Delgadillo*, 243 Fed. Appx. 435, 438 (10th Cir. 2007) (observing that petitioner's 60(b)(6) motion "is a 'true' 60(b) motion . . . challeng[ing] a defect in the integrity of the district court proceedings," because petitioner "primarily argued that the court had erred by denying his § 2255 motion without giving him an adequate opportunity to access record documents and amend the motion to present his claims properly, thus calling into question the integrity of the proceedings from the point of view of procedural due process").

Because he diligently sought to develop that claim in state court proceedings, AEDPA erected no bar to a hearing. *See, e.g.*, *Shinn v. Ramirez*, 596 U.S. 366, 382 (2022) (noting that 28 U.S.C. § 2254(e)(2) "applies only when a prisoner 'has failed to develop the factual basis of a

---

[1] Citing *Kinsel v. Cain*, 647 F.3d 265, 273 & n. 32 (5th Cir. 2011), the State in its *Opposition* suggests that this Court has no power to consider the defect in the state court post-conviction proceedings, but the State misconstrues the so-called "no state habeas infirmities rule" completely. Rather, what this Court has held is that an allegation of a constitutional defect in the state post-conviction proceedings cannot *itself* provide the basis for habeas relief. *See, e.g.*, *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) (where the petitioner complained that errors in his post-conviction process were also due process violations entitling him to habeas relief; "An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself."). Mr. Hoffman is, however, challenging the presence of racist jurors as the basis for habeas relief, not the process of the state post-conviction proceedings.

claim,'" *i.e.*, where the prisoner "'bears responsibility for the failure' to develop the record'") (citation omitted). Instead, this Court determined that 606(b) erected an unyielding bar to development and consideration of the claim. That ruling was wrong, as *Pena-Rodriguez v. Colorado*, 580 U.S. 206 (2017), makes clear.

Although, of course, Mr. Hoffman ultimately hopes that an evidentiary hearing will finally allow him to prove his claim, that hope does not transform his 60(b) motion into a prohibited second or successive petition for which this Court lacks jurisdiction. *Marizcales-Delgadillo*, 243 Fed. Appx. at 438 (observing that petitioner discussed the merits of his § 2255 motion in his Rule 60(b)(6) motion "on the theory that to prevail on the 60(b) motion, he had to show that there was some merit in the underlying claims in the § 2255 motion," an argument that did not "reassert[] a federal basis for relief from his sentence that would render the 60(b)(6) motion a second or successive § 2255 motion").

A proper 60(b) motion, at bottom, always has the merits in mind when it is filed and considered—otherwise there would be no point in filing the motion. In *Buck v. Davis*, 580 U.S. 100 (2017), the petitioner had been denied the opportunity to present his claim of ineffective representation due to procedural default. *See id*. at 770-71. Although the focus of the 60(b) motion was on the petitioner's prior inability to have his claim heard, the ultimate remedy, once the Court ruled that the habeas proceedings should be reopened, was the grant of habeas relief.  The same is true here. Mr. Hoffman asks to reopen his habeas case so that he can present *evidence* to prove his claim. Whether that evidence proves to be sufficient to grant relief is a separate issue to be addressed at a subsequent time. *Cf. Banks v. Dretke,* 540 U.S. 668, 675 (2004) ("through discovery and an evidentiary hearing ... in a federal habeas corpus proceeding, ... long-suppressed evidence came to light" and death sentence was vacated).

Because Mr. Hoffman has not "attack[ed] the federal court's previous resolution of a claim *on the merits*," he is not "bring[ing] a 'claim,'" and not improperly presenting a second or successive petition for which he is required to first seek circuit approval. *Gonzalez*, 545 U.S. at 532. His 60(b) motion is a true 60(b) motion.

> **II.     The Basis for Reopening the Case, Just as in *Buck v. Davis*, Is the Confluence of Intervening Case Law *and* The Extraordinary Circumstances of Mr. Hoffman's Claim of Racial Bias in His Capital Jury.**

Although intervening decisions can open the door to relief under Rule 60(b)(6),[2] this case is not just about new case law. Rather, this case is on all fours with *Buck v. Davis*, *supra.* Just as in *Buck*, intervening decisions have created a pathway to correct a structural defect – in *Buck*, the procedural default of his claim; here, the denial of a hearing – which combined with the "disturbing" nature of the claim that counsel's ineffectiveness introduced the scourge of racism into the jury's capital sentencing deliberations, constitute the "extraordinary circumstances" warranting the reopening of the case. *See Buck*, 580 U.S at 123-25. Here, the intervening decision in *Pena-Rodriguez* establishes this Court's error in denying an evidentiary hearing on the basis of the no-impeachment rule. *Buck* demonstrates that the alleged juror misconduct in this case indicates that Mr. Hoffman "may have been sentenced to death in part because of his race[,] a disturbing departure from a basic premise of our criminal justice system" that we "punish[] people for what they do, not who they are." *Id.* at 123. Indeed, Ms. Lower's declaration, which indicates that one or more jurors imposed the death sentence on a fictional defendant they created, is based on pernicious racial stereotypes about black youth, a circumstance suggesting that the toxin of racism was more prevalent in Mr. Hoffman's case than Mr. Buck's. *See Buck*, 580 U.S. at 122

---

[2] *See, e.g.*, *Agostini v. Felton*, 521 U.S. 203, 239 (2018) (noting that "[i]ntervening developments in the law by themselves *rarely* constitute the extraordinary circumstances required for relief under Rule 60(b)(6)") (emphasis added).

4

("[W]hen a jury hears expert testimony that expressly makes a defendant's race directly pertinent on the question of life or death, the impact of that evidence cannot be measured simply by how much air time it received at trial or how many pages it occupies in the record. Some toxins can be deadly in small doses.").

Ms. Lower's declaration constitutes an extraordinary proffer of how the odious effects of racism tainted Mr. Hoffman's death sentence. In conjunction with intervening case law undermining the previous decisions in this case, these circumstances are extraordinary and justify the reopening of the case to conduct an evidentiary hearing to determine whether Mr. Hoffman can prove his claim.

### III. The Louisiana Supreme Court's Opinion Makes Clear that the State Courts Never Addressed the Merits of Mr. Hoffman's Claim and, Regardless, the Fifth Circuit's Speculation About the Merits Was Defective Because Predicated on This Court's Error in Denying a Hearing.

Before the Fifth Circuit, both Mr. Hoffman and Respondent agreed that the Louisiana courts did not reach the merits of Mr. Hoffman's racist-juror claim, among others, but the Fifth Circuit, applying a rebuttable presumption that a summary state court ruling addressed the merits, disagreed. *See Hoffman v. Cain*, 752 F.3d 430, 438-39 (5th Cir. 2014) (citing *Harrington v. Richter*, 562 U.S. 86 (2011). When specifically addressing the racist-juror claim, the Fifth Circuit affirmed this Court's denial of relief on the basis of speculation about what the state court's summary ruling meant. Under 28 U.S.C. § 2254(d), the Court concluded that "[t]he state could have easily decided that this juror affidavit fell within this jury shield provision," or, alternatively "could have concluded that the evidence did not support a finding of intentional bias or discrimination." *Id.* at 450-51.

The Louisiana Supreme Court, however, has since weighed in on what the state courts in fact did when the racist-juror claim was presented in initial state habeas proceedings: the state

courts "dismissed Hoffman's previous claim by relying on no-impeachment rules." *Hoffman*, 326 So. 2d at 237. *See also id.* at 237 n.2 (describing the state and federal court decisions).

Deference to the state court's decisions, as required by the AEDPA, thus suggests that the Fifth Circuit's analysis has been invalidated by the Louisiana Supreme Court's correction of the record. It should not factor into this Court's analysis of whether to grant Mr. Hoffman's 60(b) motion to allow an evidentiary hearing on the racist-juror claim.

Moreover, the Fifth Circuit's decision itself is predicated on the very defect Mr. Hoffman's motion is intended to correct. Mr. Hoffman has never been given the opportunity to present evidence to prove his claim, despite diligent efforts in both state and federal court. At a hearing, however, Mr. Hoffman would be able to call each of the jurors, including Ms. Lower, and ask probing questions about how Mr. Hoffman's race impacted the jurors' sentencing decisions. Because this claim has never been given a hearing, "we do not know the veracity of [the] claim[]" and Mr. Hoffman "has never been afforded an opportunity to develop [its] factual basis in the crucible of an evidentiary hearing – nor, just as importantly, has the State had the opportunity to challenge them in an adversarial hearing." *Pope v. Sec'y for the Dep't of Corr.*, 680 F.3d 1271 1294 (11th Cir. 2012); *see also Scott v. Davis*, 404 F.2d 1373, 1375 (5th Cir. 1968) (noting that where there are "controverted factual issues, we feel the District Court should have required the facts to be tested in the crucible of oral and cross-examination").

**IV.    Mr. Hoffman Is Entitled To A Stay Of Execution**

As Mr. Hoffman noted in his memorandum in support of a motion for stay of execution, in order to succeed in his application for a stay, the petitioner must present a substantial case on the merits and show that the balance of the equities weighs heaving in favor of granting the stay. Doc. 106-1, p. 6. This is in accord with the decision of United States Supreme Court, in *Nken v. Holder*,

6

556 U.S. 418, 434 (2009), which stated the test in the civil context as follows: the issuance of a stay is left to this Court's discretion, guided by four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interest in the proceeding; and (4) where the public interest lies.

As set forth more fully herein and in Petitioner's Memorandum In Support Of Motion To Reopen The Judgment Pursuant To FED.R.CIV.P. 60(b)(6), Doc. 107-1, the recent Supreme Court decisions in *Pena-Rodriguez v. Colorado*, 580 U.S. 206 (2017), and *Buck v. Davis*, 580 U.S. 100 (2017), demonstrate a defect in the integrity of the federal habeas corpus proceedings as a result of this Court's previous order denying Mr. Hoffman an evidentiary hearing on his claim that one or more jurors voted to imposed his death sentence on the basis of racial bias. This provides compelling grounds for this Court to reopen Mr. Hoffman's original habeas proceedings to allow him to prove his claim beyond the declaration submitted by Juror Lower. Thus, Mr. Hoffman has established a strong showing that he is likely to succeed on the merits, and not, as claimed by Respondent, zero chance of success on the merits.

Moreover, Mr. Hoffman timely raised this issue with the Court in light of the recent Supreme Court rulings in *Smith v. Arizona*, 602 U.S. 779 (2024), and *Andrew v. White,* 145 S.Ct. 75 (2025). Prior to these decisions, in the eight years following the decisions in *Pena-Rodriguez* and *Buck,* there appears to be no case in which a litigant successfully moved under Rule 60(b)(6) to reopen a habeas judgment on the basis of a juror's racist views. *See*, *e.g.*, *Tharpe v. Sellers*, 898 F.3d 1342 (11th Cir. 2018); *Rouse v. United States*, 14 F.4th 792, 802 (8th Cir. 2021); *Rhines v. Young*, No. 5:00-CV-05020, 2018 U.S. Dist. LEXIS 88149, at *20 (D.S.D. May 25, 2018), *certificate of appealability denied* by *Rhines v. Young*, No. 18-2376, 2018 U.S. App. LEXIS 37756

7

(8th Cir. Sept. 7, 2018); *see also United States v. Robinson*, 917 F.3d 856, 869 (5th Cir. 2019) (noting that "Robinson's contention that *Pena-Rodriguez* (in conjunction with *Tharpe*) announced a new substantive rule that applies retroactively to cases on collateral review is exceedingly doubtful").

As Mr. Hoffman noted in his memorandum in support of reopening the case, Doc. 107-1, pp. 21-24, the Supreme Court's decisions in *Smith* and *Andrew*, however, change the calculus, showing that *Pena-Rodriguez* was a straightforward application of clearly established federal law, as determined by the United States Supreme Court, in holding that Mr. Pena-Rodriguez's right not to be convicted on the basis of a juror's racist views trumped the no-impeachment evidentiary rules, is thus fully retroactive, contrary to Respondent's argument, and, accordingly, that Mr. Hoffman now has solid grounds to seek relief under Rule 60(b)(6).

Furthermore, with regard to the equities, Mr. Hoffman's pending execution is plainly an irreparable injury because he cannot vindicate his rights once he is dead. With respect to the issues of whether a stay will substantially injure other parties and the public interest, while the State has a strong interest in the timely enforcement of its criminal judgment and sentence, it did not seriously seek to enforce that sentence over the last quarter century. Only over the course of the past three weeks has the State manufactured an emergency in Mr. Hoffman's case by informing him that he would be executed by a never before used method in Louisiana. By contrast, Mr. Hoffman is promptly filing this pleading following the decision in *Andrew*. Moreover, the public has a strong interest in insuring that a death sentence is not imposed as a result of racial bias in violation of the U.S. Constitution. Both the State and the public will not be harmed by a stay of execution in order to conduct a hearing on Mr. Hoffman's serious constitutional claim.

**CONCLUSION**

For the foregoing reasons, Mr. Hoffman respectfully prays that the Court grant his motion to relieve him from the final judgment in this matter and permit him the opportunity to prove that his death sentence was fatally tainted by racial discrimination, in violation of Mr. Hoffman's rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

**Respectfully submitted,**

s/ Rebecca L. Hudsmith, La. Bar No. 07052
Rebecca L. Hudsmith
Caroline Tillman, La. Bar. No. 31411
OFFICE OF THE FEDERAL PUBLIC DEFENDER
FOR THE MIDDLE AND WESTERN DISTRICTS
OF LOUISIANA
102 Versailles Blvd., Suite 816
Lafayette, LA 70501
Phone: 337-262-6336
Facsimile: 337-262-6605
Email: Rebecca_Hudsmith@fd.org

**CERTIFICATE OF SERVICE**

This certifies that I electronically filed the foregoing motion, along with the proposed order, with the Clerk of Court by using the CM/ECF system that will send a notice of electronic filing to all counsel of record on this 18th day of March, 2025.

/s/ Rebecca L. Hudsmith