IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

JESSIE HOFFMAN, #400473,
    Petitioner

v.

DARRYL VANNOY,
    Louisiana State Penitentiary,
    Angola, Louisiana,
    Respondent

NO. 09-3041

SECTION "B"

EXECUTION SCHEDULED
MARCH 18, 2025

**PETITIONER'S POST-HEARING BRIEF IN SUPPORT OF HIS MOTION FOR STAY OF EXECUTION AND MOTION TO RE-OPEN HABEAS CORPUS PROCEEDINGS**

NOW INTO COURT, through undersigned counsel, comes petitioner JESSIE HOFFMAN, who hereby files his post-hearing brief in support of his motion for stay of execution and motion to re-open the habeas corpus proceedings in the Court pursuant to Fed.R.Civ.P. 60(b)(6).

**The Trial Juror's Declaration Evidences the Death Sentencing Jury's Consideration of the Very Racial Stereotypes Condemned by the Supreme Court in *Buck***

The juror's declaration evidences that the jury, wrongly, speculated that Mr. Hoffman's defense was to deliberately make sure there were no black people on the jury and then "play the race card and get him off later" on "technicalities like that," something that the "jurors speculated about" during the trial. In fact, Mr. Hoffman did not dismiss any black jurors (the State did) and did not mention race at all during the trial or as a defense. Despite this absence of trial evidence of race as a defense strategy, the juror's declaration further states that "[w]e (meaning the jury) thought it was a defense strategy to use his race and background in other ways" and "as an excuse to try to make us feel sorry for him being a poor black man from the projects," like "O.J. Simpson using it to get off." The jury's speculation, without any record evidence, that Mr. Hoffman was "playing the race card" by keeping blacks off the jury and using his race as an excuse "like O.J.

Simpson" is itself a pernicious racial stereotype that obviously infected the jury and its deliberations on the death sentence. Furthermore, the jury's declaration that during the "penalty phase deliberations" "[w]e thought that given his background he may have a history of drugs and things like that, we wondered if he was in a gang." The jurors again speculated, based on racial stereotypes, that Mr. Hoffman must be into drugs and gangs, despite absent of any such evidence at trial and contrary evidence that Mr. Hoffman had never been in trouble before. As in *Buck,* this declaration reeks of the jury's dispensing the punishment of death on the basis of Mr. Hoffman's immutable characteristic of race and the jury's odious discrimination against Mr. Hoffman because of his race.

The particular harm of racial stereotypes such as these is that they operate unconsciously and influence a person's perceptions when following the law and instructions in good faith. This level of racial sterotypying is particularly invidious in a capital sentencing hearing where "there is a unique opportunity for racial prejudice to operate but remain undetected" in a capital jury due to the "range of discretion entrusted to a jury in capital sentencing.

**The Louisiana Supreme Court's 2021 Ruling Is Contrary To Clearly Established Federal Law as Set Forth in *Buck* and *Pena-Rodriguez***

In a successor state post-conviction petition, the Louisiana Supreme Court addressed the merits of the racial discrimination claim despite concluding that "the juror statements suggest they No. 2020-00137 (La. 10/19/21), p. 238. Nevertheless, the Louisiana Supreme Court refused to grant relief on the merits under *Pena-Rodriguez*, concluding that the statements of Mr. Hoffman's jurors are not nearly as "egregious and unmistakable" as those presented in *Pena-Rodriguez*, conclusion is wrong as a matter of law and fact and merits habeas review by this Court of this critical federal constitutional issues.

**This Court Has the Authority to Address This Issue Under Rule 60(b)(6)**

*Buck* recognizes that these exact stereotypes are so powerful and prejudicial that a death sentence cannot stand in their presence due to the intolerable risk that they impacted the jurors' decision as certain toxins can be fatal in even the smallest doses." And, as in *Buck*, intervening Supreme Court decisions as well as the extraordinary circumstances presented in the circumstances of this case, authorize this federal habeas Court to re-open these habeas proceedings to address the defect in them resulting from the previous denial of an evidentiary hearing to address this critical juror discrimination claim in light of those Supreme Court decisions, after which the Fifth Circuit can likewise address the federal constitutional issues in light of the intervening Supreme Court decisions and the evidence presented at an evidentiary hearing.

**CONCLUSION**

For the foregoing reasons, Mr. Hoffman respectfully prays that the Court grant his motion to relieve him from the final judgment in this matter and permit him the opportunity to prove that his death sentence was fatally tainted by racial discrimination, in violation of Mr. Hoffman's rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

**Respectfully submitted,**

s/ Rebecca L. Hudsmith, La. Bar No. 07052
Rebecca L. Hudsmith
Caroline Tillman, La. Bar. No. 31411
OFFICE OF THE FEDERAL PUBLIC DEFENDER
FOR THE MIDDLE AND WESTERN DISTRICTS
OF LOUISIANA
102 Versailles Blvd., Suite 816
Lafayette, LA 70501
Phone: 337-262-6336
Facsimile: 337-262-6605
Email: Rebecca_Hudsmith@fd.org

## CERTIFICATE OF SERVICE

This certifies that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system that will send a notice of electronic filing to all counsel of record on this 18th day of March, 2025.

<u>/s/ Rebecca L. Hudsmith</u>